## WILLIAM E. LEVERICH v. CLEMENCE TOBY.

Where the real owner of property suffered one who held a simulated title thereto to mort-
gage it, the property is bound for the mortgage; and a purchaser at a sale of the property
under an order of seizure and sale issued on the mortgage, will be protected in his pur-
chase, although the real owner had established, in a suit commenced after the date of the
mortgage against the mortgagor, that his title was simulated.

APPEAL from the District Court of Jefferson, *Clark*, J. *Benjamin* and
*Micou*, for plaintiff. *Ogden* and *Duncan*, for defendant. The judgment of
the court was pronounced by

PRESTON, J. The plaintiff brings this suit for a square of ground in the city of
Lafayette, in the possession of the defendant, with the buildings and improvements.

A deed of sale to the square was made to *Henry Locket*, by *William McCaw-
ley*, by act passed before *F. Grima, Esq.*, notary, on 2d of November, 1838, for
the price of $9000, payable at one, two and three years' credit.

*Locket* mortgaged the property to the Merchants' Insurance Company of
New Orleans, by an act passed before the same notary, dated 2d of March,
1842, for a loan of five thousand dollars.

There was a balance of $3500 due by him on the loan, and on the 30th of
March, 1847, the company issued an order of seizure and sale against the pro-
perty. The property, however, was not sold in consequence of *William T.
Hepp* becoming security for the debt, if not paid in six months. The debt was
not paid by *Locket*, and on the 10th of October, 1849, *Hepp* paid the debt, and
took a notarial subrogation of the rights of the company to the mortgage against
*Locket*.

On the 30th of January, 1850, *Hepp* issued a pluries writ of seizure and
sale; and on the 30th of March, 1850, the sheriff, after advertising and apprais-
ing the property, adjudicated it at a public sale to the plaintiff, who, finding the
property in the possession of the defendant, on the 9th of May, 1850, brought
this suit to recover it.

The defendant answered that the sale was a nullity, because *Locket* never had
the ownership or possession of the property. She alleges that one *Thomas
McKinney*, out of strong obligations of gratitude to her late husband, and motives
of friendship for herself and family, placed in the hands of *Locket* a large sum of
money to purchase and establish a home for her and her children; and that
*Locket* purchased the property with those means and that money which was
through him donated to her; that she has been notoriously in possession of the
property as owner for more than ten years, and had expended twelve thousand
dollars in its improvement.

She alleges further, that, on the 12th of January, 1850, *Locket* brought a
petitory action against her for the property, to which she answered, pleading the
same matters; and that the sheriff's sale took place after issue joined in that suit;
that *Leverich* therefore purchased a litigious right, had paid only a small part of the
price, and that she was entitled to the property on paying that sum: further,
she claimed, if these pleas failed, the twelve thousand dollars she had expended
in improving the property, the improvements being worth that sum.

On the day the suit was about to be tried by the jury, the defendant filed an
exception, that the plaintiff, by the sheriff's sale, had acquired only the rights of

*Locket* to the property; that at the date of the sale the suit between her and *Locket* was pending; that the plaintiff's rights could only extend to have himself subrogated to *Locket's* rights, and substituted for him in the suit between them; and that his suit should be dismissed on account of the *lis pendens*. She moreover excepted that the suit between her and *Locket* had been terminated by a judgment in her favor, which she pleaded as *res judicata* against the plaintiff's claim. The court sustained these exceptions, and dismissed the suit. The plaintiff has appealed.

To sustain the plea of *lis pendens*, or *res judicata*, not only the subject but the parties in the pending or adjudged suit must be the same, or privies to the parties in the pending or adjudged case.

The subject matter of the present suit is the same square of ground which was in controversy between *Locket* and *Mrs. Toby*, and which has been adjudged to the latter: and *Mrs. Toby*, in reality, is defendant in both suits. But is *Leverich* a privy to *Locket*, and has he no rights which *Locket* could not exercise? He holds *Locket's* title to the land, which, if it was not a better title than *Locket* could convey to him after the suit brought for the land, undoubtedly the suit pending a judgment in favor of *Mrs. Toby* would avail her.

But he holds that title under a mortgage granted by *Locket* upon the land in 1842. At that period *Locket* was, by the consent of *Mrs. Toby*, or those who acted for her, the owner of the land by the recorded title. Neither purchasers nor mortgagees were obliged to look beyond the recorded title, because no suit was then pending, or judicial claim on behalf of *Mrs. Toby* for the title; nor was there on record anything to show that *Locket* held the land for her, as she has since established by suit and judgment. The mortgage created an absolute right in the mortgagee to sell the land for the satisfaction of his debt, if not paid by *Locket* or those interested. The right to sell implies the correlative right in another to buy. If the mortgage was fraudulent as to *Mrs. Toby*, third persons could not be affected by the fraud, as she had brought no suit to make it known; as she permitted the title to remain in *Locket*, third persons, even if they knew it was her property, had a right to believe that he was making the mortgage for her benefit. Whom she trusted others might well trust, so far as to apprehend no disturbance by her.

Now, under these circumstances, *Locket* mortgaged the land, and even with the pact *de non alienando*. He bound himself not to alienate it to the prejudice of the mortgage. He, of course, bound himself to warrant the title to the property. He cannot be permitted to violate these obligations to the prejudice of innocent third persons, and defeat their rights by not defending a suit for the land; and they cannot be defeated by *Mrs. Toby*, because she permitted the land to remain in *Locket's* name, and by so doing enabled him to injure innocent third persons, if she can repudiate his mortgages.

Mortgages would be truly unprotected, if secret but real owners of the mortgaged premises might defeat their rights by showing that the title of the mortgagor was held by simulation for them. The simulation, if thus used, would become a fraud which our laws could never tolerate.

If any matter is better settled in our jurisprudence than another, it is that the simulation of acts cannot affect the rights of third persons acquired against the apparent owner of the property.

*Bonâ fide* titles and mortgages, if not recorded in the proper conveyance or mortgage offices, have always been postponed to subsequent titles or mortgages

LEVERICH
*v.*
TOBY.

duly recorded. How little reason, therefore, is there for pretending a different principle as to secret and unknown titles.

The defendant is entitled to the trial by jury on the merits of the case, which she asks, and possibly may establish such knowledge of her rights on behalf of the plaintiff, and combination with *Locket* to injure her, as may defeat his claim.

The sheriff, as alleged, did not, under the order of seizure and sale, take actual possession of the property, so as on its adjudication to deliver actual possession to the purchaser, unless prevented by legal opposition or injunction. It was a great irregularity. The executory process does not issue against a mere right, but against property. The necessity of a suit for the property indicates that this irregularity existed. Still it is doubtful whether the defendant can take advantage of the irregularity, having caused it by her own opposition. It is for the parties and the court to settle all these matters legally and equitably on the trial of the case on its merits ; for which it must be remanded.

The judgment of the district court is therefore reversed, the exceptions of *lites pendentes* and *rei judicatæ* overruled, and the case remanded for a new trial on its merits; the appellee to pay costs of the appeal.