### JOSEPH MOORE *v.* AUG. W. JOURDAN.

Possession under an act of sale not recorded, is not sufficient notice to creditors and subsequent purchasers, to defeat the operation of the registry laws.

A preëmption right on a tract of land cannot be transferred until it be paid for, and a receipt obtained from the receiver.

APPEAL from the District Court of the Parish of Point Coupeé, *Haralson*, J. *John Yoist* and *U. B. & E. Phillips*, for plaintiff. *Provosty & Jourdan*, for defendant and appellant.

COLE, J. This suit was instituted by *Joseph Moore*, to recover from the defendant, *A. W. Jourdan*, a tract of land fronting on Bayou Lafouche, known as

MOORE
*v.*
JOURDAN.

subdivision No. 1, of lot 4 of sec. 31, of township 2, range 8, and subdivision No. 1, of lot 4, of sec. 73, township 2, range 7 east.

This land was purchased by plaintiff by public act of sale from *J. W. Mills*, on the 19th of February, 1856, duly recorded on the 21st of the same month and year.

*Mills* acquired the land from the United States on the 1st of April, 1854.

Plaintiff also claims five dollars per acre for hire of the land since defendant has had it in his possession.

The defendant claims to be the owner of the land, from having bought it from *Ira E. McGehee*, of Arkansas, who purchased it from *Mills*, the plaintiff's vendor, by private act, on the 2d of March, 1847, and alleges that *Mills* had then acquired a *title* to the same from the United States, and he specially denies that *Mills* purchased it in 1854. That if he obtained a receipt for it in 1854, the receipt was granted in error, and obtained fraudulently by *Mills* and plaintiff. *That the second receipt was obtained for the purpose of conferring a title to the land to plaintiff.* But, that should the second receipt be legal, it enures to the benefit of respondent.

Defendant also alleges that plaintiff knew of the sale of the land by *Mills* to defendant's vendor, *McGehee;* that he assisted *Mills* to deceive the Register to obtain a receipt in order to secure the land to himself; that he acquired the land from *Mills* fraudulently, and with a full knowledge of the transfer of the same to *McGehee*, and that he paid no consideration for it. He also claims compensation for improvements in case of eviction in his amended answer, and reiterates the statement that *Mills* acquired no new title to the land by virtue of the receipt of 1854, but had already acquired the land from the government, on the 17th of December, 1844.

There was judgment for plaintiff, and defendant has appealed.

The sale from *Mills* to *Moore* is by authentic act, and was duly recorded on the 21st of February, 1856, two days after it was executed.

The title under which defendant claims, is a *bond* executed on the 2d of March, 1847, given by *Mills* to *McGehee*, for the sum of one thousand dollars, the condition of which is :

"That whereas, the above bound *James Mills* has this day, by bargain and sale, relinquished all his rights and title to a certain tract of land lying on the Bayou Latanache, State and parish aforesaid, being the same on which the said *James Mills* and family now reside, and adjoining lands which the said *I. E. Mc-Gehee* recently purchased from *Asa Brown*, and for and in consideration of the said bargain and sale above named, the said *I. E. McGehee* has this day paid to the said *James Mills*, the receipt of which is hereby acknowledged, the sum of two hundred dollars in money, and the further sum of three hundred dollars in a draft on the mercantile house of *Moon, Titus & Co.*, of New Orleans, payable at sight, which said draft, the said *Mills* binds himself to present for payment before the expiration of twenty days from the date hereof, and if payment of the three hundred dollars be made, then the said *Mills* binds himself by these presents to abandon the foregoing described lands within twenty days from the date hereof, and give to the said *I. E. McGehee* full, quiet, and peaceable possession of the aforesaid land, together with all the buildings thereon. Now, if the said *Mills* shall strictly comply with the foregoing stipulations, then this obligation to be *null and void*, otherwise to remain in full force, virtue and effect."

This document is certified to be a true copy from the original on file, and of

MOORE
*v.*
JOURDAN.

*record* in the Recorder's office. The certificate is dated 18th July, 1856, which is the day, we presume, that it was recorded, as we have no other evidence of its registry.

*Moore's* title was recorded on the 21st of February, 1856, about five months previous.

The Act of 1855, p. 335, provides, that no notarial act concerning immovable property, shall have any effect against third persons, until the same shall have been recorded in the office of the Parish Recorder, or Register of Conveyances of the parish where such immovable property is situated.

Even if *Moore*, at the time of his purchase, knew that the land had been sold to *McGehee*, still this would not benefit the defendant.

It cannot be admitted that possession under an act of sale not recorded, is sufficient notice to creditors and subsequent purchasers to defeat the operation of the registry laws. *Poydras* v. *Laurans*, 6 An. 772; *Tulane* v. *Levison*, 2 An. 789.

It does not, however, appear that *Moore* knew, or could have known, that *Mills* had sold the land to *McGehee*, because *Mills* only agreed upon certain conditions to give him possession of it.

But even if the bond had been recorded anterior to the sale to *Moore*, it would not appear to be valid as a sale, because by its terms the obligation was to be null if *Mills* complied with its conditions, and it appears that he did. It might be viewed as an agreement to sell, which would have authorized an action by *McGehee* to compel *Moore* to have passed a sale of the land to him.

In the sale from *McGehee* to defendant, only the right, title and interest of *McGehee* to this land is conveyed.

Plaintiff offered to prove that this bond was obtained by *McGehee* from *Mills*, by fraud and misrepresentation, and that it was given by *Mills* in error, which was produced by the fraudulent misrepresentations of *McGehee*.

This testimony was ruled out by the District Judge, for the purposes for which it was offered, but was received for the purpose only of rebutting the charge of fraud set up by defendant.

The evidence also shows that *Mills* had entered the first lot; but his entry had been cancelled in 1846, on the ground that the front portion could not be entered separately from the back part, and the Register was instructed to notify *Mr. Mills* to come forward and enter the whole tract if he chose to do so, as his proof was regarded as sufficient, and if not, to return to him the money paid for the front lot. But it was not until the first of April, 1854, that he went to the land office and paid for, and received a new certificate for the *whole tract*.

*Mills* had, in 1847, at the time of the execution of the bond, only a preëmption right on the whole tract, which could not be transferred until he paid for it, and obtained a receipt from the Receiver, which he did not do till 1854. *Arbour* v. *Nettles*, 12 An. 217; *Penn* v. *Ott*, 12 An. 233.

Judgment affirmed with costs.

Re-hearing refused.