(61 South. 225.)

No. 19,035.

SCHNEIDAU v. NEW ORLEANS LAND CO.

(June 19, 1912. On Rehearing, March 3, 1913.)

*(Syllabus by the Court.)*

1. TAXATION (§ 746*)—TAX TITLES—VALIDITY.

Where, years after an adjudication of property for taxes, a tax collector, succeeding to the office, assumes, as by virtue of such adjudication and previous assessment and advertisement, to make a title to property which was neither assessed, advertised, nor adjudicated, his act bears no resemblance to a tax deed, and is utterly void of effect in so far as it relates to the property not assessed, advertised, or adjudicated.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1491, 1492; Dec. Dig. § 746.*]

2. VENDOR AND PURCHASER (§ 231*)—BONA FIDE PURCHASERS—NOTICE—RECORD.

The General Assembly, in declaring that all contracts, affecting immovable property, which are not recorded, "shall be utterly null and void, except as between the parties thereto," has, from considerations of public policy, provided a method, intended to be simple, sure, and inflexible, whereby those who desire to invest their money in real estate may be able to find, upon the public records, the evidence, and all the evidence, needed to establish or defend the title thereto; and the law which has been enacted to that end would be improperly inter-

preted, and its purpose defeated, if it were held that an unrecorded vendee can convey to another a title good against a purchaser from the owner of record and against the world.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 487, 513–539; Dec. Dig. § 231.*]

3. STATUTORY PROVISIONS—RECORD OF CONVEYANCES.

The concluding paragraph of C. C. art. 2266, which reads, "The recording shall have effect from the time when the act is deposited in the proper office and indorsed by the proper officer," finds its application outside of, but not within, the parish of Orleans, since in other parishes the original acts are "deposited" with the parish recorders and become parts of the archives of their offices, whilst in the parish of Orleans excerpts from such acts are registered or recorded, but the acts are not "deposited."

4. MORTGAGES (§ 94*)—RECORD—MODE OF RECORDING.

There is a difference between the law regulating the recording of mortgages and that by which the registry of conveyances is governed. The mortgage is not recorded until actually "inscribed" in the book of mortgages, and this rule applies throughout the state, as well as in the parish of Orleans.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 205; Dec. Dig. § 94.*]

Breaux, C. J., dissents.

On Rehearing.

5. VENDOR AND PURCHASER (§ 231*)—BONA FIDE PURCHASERS—NOTICE—RECORD.

Acts of sale, contracts, and judgments, affecting immovable property, must be recorded in the office of the parish recorder or the register of conveyances. If not recorded, they shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording. Article 2266, Civil Code.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 487, 513–539; Dec. Dig. § 231.*]

6. DEEDS (§ 81*)—RECORD—STATUTES.

"The recording shall have effect from the time the act is deposited in the proper office and indorsed by the proper officer." This provision of law has equal application to all of the parishes of the state, including Orleans. Article 2266, C. C.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 177; Dec. Dig. § 81.*]

7. DEEDS (§ 81*)—RECORD—STATUTES.

Article 2254 of the Civil Code, relative to the recording of conveyances in the parishes outside of Orleans, and article 2262, relative to the recording of conveyances in the city of New Orleans, provide that such acts shall have no effect against third persons, but from the date of their being deposited in the proper office, and article 2264 is to the same effect. Article 2266 contains the same provision, and further explains that the resulting effect of such recording takes place when the act to be recorded is deposited in the proper office and indorsed by the proper officer. This last article is general in its terms and embraces all the parishes of the state.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 177; Dec. Dig. § 81.*]

*(Additional Syllabus by Editorial Staff.)*

8. RECORDS (§ 4*)—"REGISTRY"—DEPOSIT FOR RECORD.

The "registry" of which Civil Code, c. 6, § 3 (arts. 2251–2266), treats is understood in its usual sense of the act of recording or writing in the register or depositing in the place of public records, and is used interchangeably with "deposit" and "record."

[Ed. Note.—For other cases, see Records, Cent. Dig. § 5; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 7, p. 6035.]

9. RECORDS (§ 4*)—"DEPOSIT."

The term "deposit," as used in Civil Code, c. 6, § 3 (arts. 2251–2266), relating to registry, does not necessarily mean a permanent deposit; and, when a notary public in the city of New Orleans is required to deposit his act of conveyance with the register of conveyances, it means that he shall make a mere temporary disposition of the act for the purpose of being indorsed and recorded, since the law makes him the permanent custodian of his acts.

[Ed. Note.—For other cases, see Records, Cent. Dig. § 5; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 2, pp. 1996–1999.]

Monroe and Provosty, JJ., dissenting.

Appeal from Civil District Court, Parish of Orleans; Thos. C. W. Ellis, Judge.

Action by Oscar A. Schneidau against the New Orleans Land Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Wm. Winans Wall, of New Orleans, for appellant. Chas. Louque and Dinkelspiel, Hart & Davey, all of New Orleans, for appellee.

Statement of the Case.

MONROE, J. Plaintiff sues to recover a tract of land described as fronting on Bayou St. John, in this (Orleans) parish, and run-

ning back to the property formerly belong-ing—

"to the New Orleans Canal & Banking Company, measuring 3 arpents front on Bayou St. John by a depth of 45 arpents and 41 feet on the line of the property, now or formerly belonging to Mr. Gordon, and 45 arpents and 162 feet on the line separating it from the property lately belonging to Mr. McDonough; the whole as per a plan drawn by C. A. De Armas, on Feb. 22, 1850, and deposited in the office of T. O. Stark, late notary."

The chain of title set up in the petition is as follows:

(1) June 16, 1905, by act before C. Schneidau, notary, plaintiff purchased from Mary S. Texier, wife of L. G. Cronan, Anna A. Texier, wife of Jas. T. O'Dowd, Charlotte A. and Blanche D. Texier.

(2) October 5, 1893, judgment in Succession of Mary Ann Cronan, widow of A. Texier, recognizing plaintiff's vendors as sole heirs of the decedent, and putting them in possession of her estate.

(3) February 2, 1883, by act before A. Hero, Jr., notary, Mary Ann Cronan, wife of A. M. M. Texier, purchased from William S. Benedict.

Defendant, for answer, sets up title as follows:

(1) June 18, 1895, by act before T. Buisson, notary, defendant acquired said property in exchange for other property conveyed to the New Orleans & Western Railroad Company.

(2) June 18, 1895, by act before T. Buisson, notary, the New Orleans & Western Railroad Company purchased from John Spansel.

(3) June 18, 1895, by act before T. Buisson, notary, John Spansel purchased from William S. and Percy Benedict, and plaintiff's vendors intervened and joined in the conveyance.

(4) It is alleged that Percy S. Benedict had acquired a title at a tax sale, under Act No. 82 of 1884, and an act before Rabouin, notary, March 19, 1894. It is also alleged

that the rights of the New Orleans & Western Railroad Company were acquired by the New Orleans Terminal Company, the name of which was changed from St. Louis & San Francisco Railroad Company; and defendant called the terminal company in warranty, and that company filed an exception of no cause of action.

The evidence shows that the whole tract, as described in plaintiff's petition and in the sale from W. S. Benedict, the common author under whom both litigants claim title, embraces 69 squares and parts of squares; "that a certain tract of land in the Second district of the city of New Orleans, in the square bounded by St. Philip, St. Louis and Brook streets and Harney avenue, designated as square No. 9, * * * was assessed for the years 1872, 1873, 1874, 1875, 1876, 1877, and 1878 in the name of Dennis Cronan;" that the tract so described includes but 9 of the 69 subdivisions into which the entire tract here claimed is divided; that said 9 subdivisions were adjudicated, as assessed, by Rabouin, Jr., acting for Charles Cavanac, tax collector, for $1, in August, 1886, to P. S. Carrington, who, in December, 1893, for $5, transferred the interest so acquired by him to Percy S. Benedict; that nearly seven years later, to wit, in 1894, another tax collector, Henry Guillotte, executed a deed to Percy Benedict, purporting to convey the entire tract (of 69 squares and parts of squares) as having been so assessed and adjudicated. Percy S. Benedict is not shown or alleged to have had any other interest in the property in dispute than such as he may have acquired in the manner thus described. The act of sale from William S. Benedict to Mrs. Mary Ann Cronan of February 2, 1883, is in evidence and shows a sale of the entire tract, as described in the petition, together with other property. There is also in evidence a certificate from the register of conveyances, of date June 16, 1905, showing that said tract, as described in the petition,

had not been alienated by said Mrs. Mary Ann Cronan, wife, etc.—

"except (by) judgment of C. D. C., rendered in matter of Succession of Mrs. Mary Ann Cronan, widow of Alfred Texier, No. 40,261, docket of said court, putting Mary Sedonia Texier, wife of Lawrence G. Cronan, Charlotte Antoinette Texier, Blanche Denise Texier, and Ann Agnes Texier, wife of James T. O'Dowd, in possession of her estate, October 5, 1893. C. O. B. 150/747. Also judgment in Succession of Alfred Texier, No. 40,462, docket C. D. C., putting above named in possession October 25, 1893, C. O. B. 149/776."

There is in evidence an act before Buisson, notary, of date June 18, 1895, purporting to evidence a sale by William S. and Percy S. Benedict to John Spansel of the entire tract described in the petition, in which act Mrs. Mary Sedonia Texier, wife of Lawrence G. Cronan, Miss Charlotte Antoinette Texier, Miss Blanche Denise Texier, and Mrs. Anne Alice Texier, wife of James T. O'Dowd, and her husband to authorize her, intervened and declared that they renounced in favor of the vendee all interest which they might have in the property, and joined the vendor, "if need be," in the sale.

The only registry of the transaction thus mentioned, which was made in the books of the conveyance office, reads as follows:

"William S. Benedict and Percy S. Benedict sold unto John Spansel a certain lot of ground or tract of land, with all the rights, etc., fronting on the Bayou St. John, in this parish, and running back to the property of the New Orleans Canal & Banking Company, measuring 3 arpents front on said Bayou St. John by a depth of 45 arpents, and 41 arpents on the line separating it from property belonging to Mr. Gordon, and 45 arpents and 162 feet on the other side line, separating it from the property lately belonging to Mr. McDonough, the whole, as per plan drawn by C. A. De Armas, on February 22, 1850. Acquired January 3, 1871, C. O. B. 365; also acq at tax sale, March 19, 1894; C. O. B. 153, fol. 252. This sale is made for $3000, cash. Registered June 19, 1895."

There was no registry of any alienation by the heirs of Mrs. Mary Ann Cronan, widow of A. Texier. It is shown that, upon the same day that he thus acquired, Spansel conveyed to the New Orleans & Western Railroad Company the property as thus acquired and described, and that on the same day, and by the same description, the railroad company conveyed said property to the defendant herein; there being no mention of the names of the heirs of Mrs. Texier, as prior owners of the property, in either of the acts of conveyance last mentioned, and no entry upon the conveyance records, in connection therewith, showing that they had alienated their interest in said property. To the contrary, on June 11, 1911, nearly six years later, and nearly that long after the plaintiff herein had bought said interest and had instituted this suit, the register of conveyances issued his certificate to the effect that, according to the indexes of his office, it did not appear that said property, acquired by said heirs under judgment in the Succession of Mrs. Mary Ann Cronan, widow, etc., had ever been alienated by them. Upon the case thus presented, there was judgment in the district court in favor of defendant, from which plaintiff has appealed.

## Opinion.

[1] It is conceded that plaintiff is not entitled to recover that portion of the land here claimed, which was assessed, advertised, and adjudicated for taxes; and it is too plain to admit of discussion that, in so far as the tax collector, seven years after such adjudication, assumed as by virtue thereof, and of previous assessment and advertisement, to make title to property which had never been either assessed, advertised, or adjudicated, his act bore no resemblance to a tax deed, and was utterly void of effect. Guillory v. Elms, 126 La. 560, 52 South. 767.

[2] With respect to the remaining 60 of the 69 subdivisions constituting the whole tract in controversy, it is shown that they belonged (at the date of the sale by the Messrs. Benedict to Spansel) to the heirs of Mrs. Mary Ann Cronan (widow Texier), and

that they, intervening in that sale, conveyed their interest to the vendee; but it is beyond dispute that no recital or other evidence of such intervention or conveyance was ever recorded in the books of the register of conveyances, and equally beyond dispute that plaintiff thereafter bought said interest from the owners of record. The sole question, then, is whether he is affected by the unregistered title set up by defendant.

That question was the subject of investigation by this court in a recent case, in which it was held (quoting from the syllabus) that:

"The law which declares that all contracts affecting immovable property, which shall not be recorded in the parish where the property is situated, shall be utterly null and void, except between the parties thereto (Laws of 1855, p. 335, No. 274) is clear and unambiguous. It was intended to settle, in this state, the question whether knowledge, possessed by a third person, of a contract, affecting immovable property, shall be considered, so far as such person is concerned, equivalent to the registry of the contract; and it settled that question in the negative. Fraud cuts down everything. * * * It cannot, however, be said that a third person perpetrates a fraud merely by treating as void, as to himself, a contract which the law, in terms, declares shall be utterly null and void, except between the parties thereto." McDuffie v. Walker, 125 La. 152, 51 South. 100.

The conclusions thus stated were based upon statutory enactments, dating back to 1810, as construed by many decisions of this court, to wit:

"According to the provisions of the act of the 25th of March, 1810 (3 Martin's Dig. p. 140, § 7), no notarial act concerning immovable property has effect against a third person until the same shall have been recorded in the office of the judge of the parish where such immovable property is situated. * * * This law has already received an interpretation by a judgment of this court in the case of Carraby v. Desmarre et al. [7 Mart. (N. S.) 661]. In relation to third persons, the act of sale, not recorded, is considered as void." Gravier et al. v. Baron et al., 4 La. 241.

See, also, Carraby v. Desmarre, 7 Mart. (N. S.) 661; Williams v. Hagan, 2 La. 122; Mary v. Lampré, 6 Rob. 314; Crear v. Sowles,

2 La. Ann. 597; Tulane v. Levinson, 2 La. Ann. 787. In the case last above cited, after holding that an act of sale must be recorded in the proper office—not the mortgage office —to have effect against third persons, either as transferring title or possession, and that "Notice is not equivalent to registry in relation to conveyances of real estate," and after finding, as a fact, that the attorney of the seizing creditor knew, before making the seizure, that the property, which he caused to be seized, had been sold by the debtor, and that the sale had been recorded, in the mortgage office (instead of the conveyance office), the court said:

"As we consider the right of the plaintiffs to have the property sold to satisfy this debt paramount to that of the defendant, under his unrecorded deed, * * * we do not see how that right can be impaired by this knowledge on the part of his attorney."

In Leverich v. Toby, 6 La. Ann. 463, 464, it was said:

"Bona fide titles and mortgages, if not recorded in the proper conveyance or mortgage office, have always been postponed to subsequent titles or mortgages duly recorded. How little reason, therefore, is there for pretending a different principle as to secret and unknown titles."

In Poydras v. Laurans, 6 La. Ann. 772, 773, Eustis, C. J., speaking for the court, said:

"The decisions under these statutes [referring to certain English statutes] as to what notice will save the holder of an unregistered deed form no part of our jurisprudence, nor has the doctrine ever been recognized by this court that possession, under an act of sale, not recorded, was sufficient evidence of notice to creditors and subsequent purchasers to defeat the operation of the registry laws. In the case of Tulane v. Levinson, we said: 'The theory that notice is equivalent to registry, in relation to conveyances of real property, we do not understand to have been adopted in our jurisprudence.' The subject has been several times under consideration, and the difficulties attending every mode in which laws of that description have been carried into effect in different countries have been examined and weighed. The only cases in which there has been any exception, to the effect of registry of conveyances, have been those of gross fraud on the part of subsequent purchasers. Splane v. Micheltree, 2 La. Ann. 265; McGill v. McGill, 4 La. Ann. 269."

In Raiford v. Wood, 14 La. Ann. 116, it was said:

"A sheriff's sale, not recorded in the office of the recorder of the parish where the property is situated, is utterly null and void, except as between the parties thereto."

In Moore v. Jourdan, 14 La. Ann. 416, the court used this language:

"Even if Moore, at the time of his purchase, knew that the land had been sold to McGehee, still this would not benefit the defendant. It cannot be admitted that possession, under an act of sale, not recorded, is sufficient notice to creditors and subsequent purchasers to defeat the operation of the registry laws. Poydras v. Laurans, 6 La. Ann. 772; Tulane v. Levinson, 2 La. Ann. 789."

In Cochrane v. Gibert, 41 La. Ann. 735, 6 South. 731, it was held that an unrecorded lease had no effect with regard to third persons and creditors.

In Huntington v. Bordeaux, 42 La. Ann. 346, 7 South. 553, it was said that a sheriff's adjudication must be recorded, otherwise the defendant in execution may sell the property to a third person, and the latter, not notified, by registry, of the prior sale, gets a good title.

In Harrison v. Ottman, 111 La. 739, 35 South. 848, it was said:

"The object of registry laws is to make apparent the ownership of property. An owner who neglects to have his property title recorded is exposed to loss, when opposed by a title not tainted with fraud," etc.

Other decisions to the same effect are to be found in the cases of Payne & Co. v. Pavey, 29 La. Ann. 117; State ex rel. Slocomb v. Rogillo, 30 La. Ann. 833; Way v. Levy et al., 41 La. Ann. 447, 6 South. 661; Flower & King v. Pearce & Son, 45 La. Ann. 853, 13 South. 150; Bank v. Ice Co., 105 La. 133, 29 South. 379; Baker v. Atkins & Wideman, 107 La. 490, 32 South. 69; Patterson v. Landru, 112 La. 1073, 36 South. 857; Williams v. White Castle Lumber Co., 114 La. 451, 38 South. 414; Louisville & Nashville Railroad Co. v. N. O. Terminal Co., 120 La. 978, 45 South. 962; Washington v. Filer, 127 La. 862, 54 South. 128; Riggs v. Eicholz, 127 La. 745, 53 South. 977.

In John T. Moore Planting Co. v. Morgans, etc., Co., 126 La. 840, 53 South. 22, it was said:

"An unrecorded deed to real estate is an utter nullity in so far as the rights of third persons are concerned. It stands as if not written."

[3, 4] It may serve some useful purpose to say in this connection: (1) That the concuding paragraph of article 2266 of the Civil Code, reading:

"The recording shall have effect from the time when the act is deposited in the proper office and indorsed by the proper officer"—

finds its application outside of, but not within, the parish of Orleans; the reason being that the originals of all contracts affecting real estate, situated in parishes other than the parish of Orleans, are required to be "deposited" in the offices of the parish recorders, and become parts of the archives of those offices. C. C. arts. 2251, 2252, 2254; Act No. 48 of 1890. On the other hand, notaries, before whom such acts are executed, affecting real property within the parish of Orleans, are required to cause certified abstracts of their contents to be "registered," but they are made the custodians of the original instruments. In the event of death, withdrawal, etc., of the notary, the keeper of notarial records becomes the custodian of his records, and they are never "deposited" in the office, and never become part of the archives, of the register of conveyances or recorder of mortgages. C. C. art. 2255; Act No. 50 of 1882; R. S. §§ 2499, 2543, 2544; Way v. Levy et al., 41 La. Ann. 447, 6 South. 661, supra. (2) That there is a difference between the law regulating the recording of mortgages and that by which the registry of conveyances is governed, for, whilst (out of the parish of Orleans, as we have seen) a conveyance may

be held to be recorded "from the time when the act is deposited in the proper office and indorsed by the proper officer," the law provides that a mortgage (whether in the parish of Orleans or elsewhere) shall take effect, not from the date of the deposit and indorsement of the act, but from the moment it is actually inscribed in the book of mortgages. C. C. arts. 3329, 3342, 3345, 3348; Payne & Co. v. Pavey, 29 La. Ann. 117; State ex rel. Slocomb v. Rogillo, 30 La. Ann. 833; Way v. Levy et al., 41 La. Ann. 447, 6 South. 661.

Reverting to the facts disclosed by the record in this case, the answer of the defendant does not allege that plaintiff ever knew that his vendors had parted with their interest in the property in question before they sold it to him; and there is no suggestion of fraud, on the part of plaintiff, either in defendant's pleadings or in the brief filed on its behalf. Its learned counsel refers us to the case of Hollingsworth v. Wilson, 32 La. Ann. 1012, the syllabus of which (sustained by the text) reads, in part, as follows:

"A. sold an immovable to B. in 1845, and sold the same property to C. in 1850. The sale to B. was not recorded; that to C. was recorded in 1850. But B. sold to D. in 1848, and the sale was recorded in 1848. *Held*, that D.'s title must prevail against that of C."

The decision in the case thus cited was placed upon the sole ground that the question had been settled by five decisions, "the last of which was rendered in 1852." In those decisions (beginning with that in Stockton v. Briscoe, 1 La. Ann. 249, and ending with that in Buchanan v. Morgan, 7 La. Ann. 454), Mr. Justice Slidell dissented throughout, and, in our opinion, the view expressed by him was the correct one, and is alone reconcilable with the preceding and subsequent jurisprudence.

In Mary v. Lampré, 6 Rob. 314, for instance, it appeared that Kokernot, being the owner of real estate, by recorded title, sold it to Bertrand, whose title was not recorded; that Bertrand sold to Morgan, and Morgan to Mary, by deeds which were recorded; that the property was seized, under an execution against Kokernot, and Mary enjoined the seizure, alleging that, although the deed from Kokernot to Bertrand had not been recorded, the subsequent conveyances had been recorded, and that she was the owner. It was held by the court (quoting from the syllabus) that:

"Under the fifth section of the act of the 20th of March, 1827 (Laws 1827, p. 138), creating the office of register of conveyances for New Orleans, a sale of real estate can have no effect against third persons but from the date of its registry; and where a judgment against a vendor was recorded by the register of mortgages, before the registry, in the conveyance office of the sale from him, the sale will be without effect as to the judgment creditor, and this though a sale of the property from the first vendee to the plaintiff was registered before the judgment."

Upon application for rehearing, the court said:

"In this case Lampré obtained his judgment against Louis Kokernot & Co., had it recorded, and execution issued and levied on the premises in question, previous to the registry of the sale from Louis Kokernot to Bertrand. His lien on the property had attached and become vested, and we cannot deprive him of it, however severely it may operate on the plaintiff. The case of Williams v. Hagan, etc., 2 La. 122, is nearly similar to this, and the principle is sustained by that of Syndic of McManus v. Jewett, 6 La. 540. The counsel for the plaintiff contends that his client should not suffer for the neglect of the notary to have the act, passed before him, recorded. Upon this point, all we can say is that if it were the duty of the notary to have the act recorded and he failed to do so, and damage had resulted, the parties must look to him. Lampré cannot be deprived of his right acquired, in consequence of his neglect, and be made responsible. He has done what the law authorized him to do, and he is entitled to the benefit of it."

In the case of Baker v. Atkins & Wideman, 107 La. 491, 32 South. 69, it was held (quoting the syllabus) that:

"Where A. is the owner of real estate by undisputed title, and sells the same to B., who fails to record his title, the judgment creditors of A. can acquire judicial mortgages on such

property by recording their judgments after the date of such sale and before its registry. And in such case the judicial mortgages recorded against A., prior to the registry of the sale, prime all such mortgages, recorded against B., whether the latter be recorded before or after the former."

In Harrison v. Ottman, 111 La. 739, 35 South. 848, citing the case thus referred to, the court said:

"With reference to deeds and their registry, article 2266, Civ. Code, and others in pari materia, were carefully considered by this court. While the court was not unanimous, the majority laid down the rule that unrecorded deeds are absolutely without effect, save inter partes. It is a rule of property to which we must adhere."

In Williams v. White Castle Lumber & Shingle Co., 114 La. 448, 38 South. 414, plaintiff claimed title, through mesne conveyance, from a levee district; defendant claimed from the same author under a deed later in date but earlier in registry; and it was said by this court;

"When the conveyance last mentioned was made and accepted, there was nothing upon the records of the parish * * * to indicate that the vendor had previously parted with the land, and it follows that the prior, unregistered conveyance, relied on by the plaintiff, can be accorded no effect as against the vendee."

In McDuffie v. Walker, supra, the cases of Stockton v. Briscoe and Buchanan v. Morgan relied on (in part) as the basis of the decision in Hollingsworth v. Wilson, upon which defendant now relies, were mentioned as cases in which the jurisprudence had fluctuated, and the opinion proceeds:

"And there were still other cases which served to derogate from the force of the statutes as interpreted in the cases first cited, so that the jurisprudence of the state can hardly be said to have been in a satisfactory condition. In 1855, therefore, the General Assembly took the matter up," etc.

Then follows a review of the legislation of 1855, including Act No. 274, which has been incorporated as articles 2265, 2266, in the Civil Code, and of the jurisprudence predicated thereon, with the result as stated in the beginning of this opinion.

In John T. Moore Planting Co. v. Morgan's La. & Tex. R. & S. S. Co., 126 La. 866, 53 South. 31, it was said:

"This Hollingsworth v. Wilson decision is founded upon decisions which were made prior to the enactment of article 2266, supra, and must be considered merely as the result of inadvertence. All doubt that may have existed since the enactment of Act No. 274 of 1855, now article 2266, supra, as to the utter nullity, for any purpose, of an unrecorded title to the real estate, in so far as the rights of third persons are concerned, must be considered as having been set at rest by the decision of this court in the case of McDuffie v. Walker, * * * 125 La. 152, 51 South. 100."

Other cases in which the interpretation placed upon the law in McDuffie v. Walker has been approved are Riggs v. Eicholz, 127 La. 750, 53 South. 977; Sorrel v. Hardy, 127 La. 847, 54 South. 122.

That interpretation, we may say in conclusion, is based upon the belief that the General Assembly, in declaring that all contracts affecting immovable property, which are not recorded, "shall be utterly null and void, except between the parties thereto," has, from considerations of public policy, provided a method intended to be simple, sure, and inflexible, whereby those who desire to invest their money in real estate may be able to find, upon the public records, the evidence, and all the evidence, needed to establish or defend the title thereto, and upon the further belief that the law which has been enacted to that end would be improperly interpreted and its purpose defeated, if it were held that an unrecorded vendee could convey to another a title good against a purchaser from the owner of record and good against the world.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of the plaintiff, Oscar A. Schneidau, and against the de-

fendant, the New Orleans Land Company, decreeing said plaintiff to be the owner, entitled to possession, of the tract of land described in the petition, save and except so much thereof as is included within the following boundaries, to wit, St. Philip, St. Louis, and Brook streets and Harney avenue. It is further decreed that defendant pay all costs.

His honor, the CHIEF JUSTICE, dissents and hands down reasons. See 61 South. 230.

### On Rehearing.

SOMMERVILLE, J. This is a petitory action wherein plaintiff claims some 69 squares, or parts of squares, of ground in the city of New Orleans, which at one time belonged to Denis Cronan, and which he claims to have bought from the grandchildren of said Denis Cronan.

These grandchildren trace their title through their mother, Mrs. Mary Ann Cronan, widow of Alfred Texier. The said Mrs. Mary A. Texier acquired title from William S. Benedict February 2, 1883. And William S. Benedict acquired title from Denis Cronan January 3, 1871. It thus appears that the title to the property was in the name of William S. Benedict at the time of the death of Denis Cronan and his wife; and he subsequently transferred title, for a valuable consideration to Mrs. Mary Ann Texier, the daughter of Mr. and Mrs. Denis Cronan.

Defendant sets up title from the state of Louisiana under Act No. 82 of 1884; the state having become the owner of 9 of the 69 squares or plots of ground, which had been assessed to Denis Cronan, and sold or forfeited to the state for the taxes of several years during the time that the title was in the name of W. S. Benedict. The evidence shows that the state made title, under Act No. 82 of 1884, to Percy S. Benedict of not only the 9 squares which had been assessed to Denis Cronan and sold or forfeited to the state for delinquent taxes, but also for the other 60 squares, making 69 squares in all.

June 18, 1895, William S. Benedict and Percy S. Benedict joined in an act of sale to John Spansel. John Spansel sold to the New Orleans & Western Railroad Company, and the railroad company made an exchange with and a transfer to the defendant in this suit.

The record does not disclose why William S. Benedict was a party to the sale to John Spansel. He had sold the property to Mrs. Mary Ann Cronan, wife of Alfred Texier, February 2, 1883, and therefore had no interest in the property at the time of the sale by the Benedicts to John Spansel.

It may have been that the property stood in the name of William S. Benedict and Percy S. Benedict at different times for the benefit of their clients, and that they had no real interest in the property. It appears from the record that Denis Cronan died in 1872, and his widow died in 1879. William S. Benedict transferred the property to Mrs. Mary Ann Texier, the heir of Mr. and Mrs. Denis Cronan, and her succession was formally opened in that same year; William S. Benedict appearing as the attorney for her heirs.

In the act of sale June 18, 1895, from William S. Benedict and Percy S. Benedict to John Spansel, the heirs of Mrs. Mary Ann Cronan Texier appeared and intervened therein in the following language:

"Which interveners declared that they do by these presents renounce in favor of John Spansel, the purchaser herein, any interest which they have or may have against the property herein conveyed, hereby joining the present vendors, if need be, in the sale of the said property."

Almost 10 years thereafter, June 16, 1905, the same last-named heirs sold this same property to plaintiff: and this petitory action was filed June 17, 1905, just one day less than 10 years after the sale by said heirs to Spansel.

A more complete statement of the cause

will be found in the original opinion herein.

All of the acts of sale hereinbefore referred to were regularly deposited and indorsed in the office of the register of conveyances for the parish of Orleans; but the register failed to inscribe on his record the appearance and intervention of the Texier heirs, their renunciation, and the fact that they joined with the vendors, W. S. Benedict and Percy S. Benedict, in the sale of said property to Spansel, as the law required him to do.

Plaintiff contends that the failure to register the renunciation and transfer by the Texier heirs rendered such renunciation and transfer null and void as to him; that he bought in ignorance and without notice of such renunciation and transfer; and that he has therefore a valid title from the Texier heirs.

[5] Article 2266 of the Civil Code provides:

"All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.

"The recording shall have effect from the time the act is deposited in the proper office, and indorsed by the proper officer."

[6] It is argued by plaintiff that the last paragraph in the above-quoted article has no reference to the parish of Orleans, but refers exclusively to the parishes outside of Orleans, and that the mere depositing of the act of sale or transfer in the office of the register of conveyances is without effect, unless said act is registered or recorded; or that an extract from said act shall have been registered or recorded showing the date of the act and the place where it was passed, the names, surnames, and qualities of the contracting parties, and the description of the immovable property which has been transferred, with all necessary details; and that, as the names of the Texier heirs were not registered or recorded as the contracting parties, he bought without notice of such transfer by them to Spansel.

[7] Section 3 of chapter 6 of the Civil Code is entitled, "Of registry," and embraces articles 2251 to 2266, inclusive. Articles 2251 to 2254 contain the law with reference to registry in the parishes outside of Orleans; articles 2255 to 2263, inclusive, contain the law with reference to recordation or registry in the city of New Orleans; and articles 2264 to 2266, inclusive, contain the law which is common to all the parishes throughout the state. It therefore follows that the last paragraph of article 2266 has application in the city of New Orleans.

[8] The registry of which section 3 of chapter 6 of the Civil Code treats will be understood in its usual and ordinary sense; and registry is defined to be "the act of recording or writing in the register, or depositing in the place of public records." And we find that the legislators have used the words "to deposit," "to register," and "to record," in some instances, to denote a recording, or writing, or depositing as interchangeable words, meaning the same thing.

The registry of a deed is the only statutory method of giving notice of the change of property by means of a conveyance, and it is also the only statutory mode of giving effect and operation to such deed as to any person or persons, except the vendor and vendee and their heirs; and it seems to be the general current of authority that, when the document is lodged in the proper office, the recordation exists—is done—and we have so held with reference to the deposit of deeds in the parishes outside of Orleans.

This is the first occasion presented for a decision as to the effect, without actual registering by the register, of a deed deposited in the office of the register of conveyances in the city of New Orleans.

Prior to the adoption of the Civil Code of 1870, recordation of conveyances in the parishes outside of Orleans took effect from the date of the deposit of the act in the office

of the parish recorder; but in New Orleans such conveyances, apparently, took effect only from the date of actual registry. Such discrimination, if it existed, was abolished, and the law was made uniform by the Civil Code of 1870.

Act No. 42 of 1890, p. 34, relative to notaries public for the parish of Orleans, contains no reference to registry; and it does not purport to amend or repeal any article of the Civil Code.

Notaries in the parish of Orleans have always kept and preserved in their offices and under their custody the originals of all authentic acts executed before them; and the registry of such acts does not appear to have been required until the year 1827. Act No. 42 of 1890 makes this custom a duty, and provides that every notary shall cause such acts to be bound in separate volumes for each year, with complete indexes attached to each volume; and it penalizes the failure of the notary to cause his acts to be so bound and indexed. Such a statute can hardly be construed as repealing, by implication, the registry laws of the state, as set forth in the Civil Code. It may be added that it is now, and has long been, the practice of many notaries in New Orleans to deposit their original acts temporarily with the register of conveyances for recordation. The act in question and several other acts of sale offered in evidence were so deposited, as appears from the certificates of the register of conveyances on said acts. It is our opinion that the deposit by the notary of an act of transfer in the office of the register of conveyances has effect as to third persons. This is the law of every other parish of the state of Louisiana, as we have frequently held; and it is and has been the law with reference to the city of New Orleans since 1870.

[9] We have remarked with reference to the section of the Civil Code entitled, "Of registry," that it may be divided into three parts: (1) relating to the law applicable to. parishes outside of Orleans; (2) relating to the law in the city of New Orleans; and (3) relating to the law common to all the parishes in the state. We have also remarked upon the use of the words "to register," "to record," and "to deposit" as having been used indifferently, as if they were synonyms. We further remark that the word "deposit" does not necessarily mean a permanent deposit. This word is not usually employed, except when the thing is intended to remain with the depositary for some time, and when the deposit is made for some specific object beyond that of mere inspection or examination. For instance, it is made the duty of every master or commander of a ship or vessel belonging to the citizens of the United States, on his arrival at a foreign port, to deposit his register, etc. Such a deposit carries with it something more than a mere delivery of the papers to the consul for redelivery in a few hours. To deposit may or may not mean a permanent disposition of the thing placed or deposited. It may mean a mere temporary disposition or placing of a thing. So that, when a notary public in the city of New Orleans is required to deposit his act of conveyance with the register of conveyances, it means that he shall make a mere temporary disposition of the act for the purpose of having it indorsed and recorded, for the law makes him (the notary) the permanent custodian of his acts; and, on the notary ceasing to hold his office, the acts go into the possession of the keeper of notarial records.

The acts of 1855 are a revision of the prior acts of the state; and the first one with reference to the subject-matter now under consideration is numbered 259, and is entitled, "An act relative to notaries in New Orleans." The second act is numbered 261, p. 322, and is entitled, "An act relative to notaries public," and in that act, § 12, it is made the duty

of notaries public in the state, without the limits of the city of New Orleans, to deposit their acts in the office of the parish recorder; and in Act No. 53 of 1864–1865, p. 144, § 14, it is made the duty of the recorder to indorse, on the back of each act transmitted to him, the time it was received by him, and to record the same without delay in the order in which they were received. "Such acts shall have effect against third persons only from the date of their being deposited in the office of the parish recorder." The third is Act No. 274 of 1855, p. 335, and is entitled, "An act relative to registry," and it applies to all the parishes in the state. In the first section reference is made to the parish recorder and to the register of conveyances, which clearly designates its general application. The fourth act is numbered 285, p. 345, and is entitled, "An act creating a register of conveyances for the parish of Orleans." This act has reference alone to the city of New Orleans.

As an instance where the words "deposited" and "registered" are used to mean the same thing reference is made to article 2262 of the Civil Code, which provides that:

"In the parish of Orleans, acts, whether they are passed before a notary public or otherwise, shall have no effect against third persons, but from the date of their being deposited in the office of the register of conveyances."

Whereas section 9 of Act No. 285 of 1855, p. 346, from which article 2262 appears to have been taken, and is entitled, "An act creating a register of conveyances for the parish of Orleans," says:

"That acts, whether they are passed before a notary public or otherwise, shall have no effect against third persons, but from their day of being registered."

The word "registered," as we have seen in the act of 1855, is made to read "deposited" in the Revised Civil Code of 1870; and the act of 1855 is amended to that extent.

Article 2264, which is taken from Act No. 274 of 1855, p. 335, being, "An act relative to registry," and applicable throughout the state, says that:

"No notarial act concerning immovable property shall have any effect against third persons, until the same shall have been deposited in the office of the parish recorder, or register of conveyances of the parish, where such immovable property is situated."

Whereas in the original act the word "recorded" was used instead of the word "deposited" in article 2264; and the original act is thus amended.

Article 2266 is also taken from Act No. 274 of 1855, p. 335, excepting the last paragraph of said article. This paragraph closes the legislation of 1870 on the subject of registry; and, as we understand the language and the intention of the Legislature, it determines the time and occasion when all sales, contracts, and judgments affecting immovable property throughout the state shall affect third persons by providing:

"The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer."

This seems to be a clear interpretation or definition by the Legislature itself. It is a recognition of what it says with reference to the parishes outside of Orleans in article 2254, and of what it says of the law in the parish of Orleans in article 2262. In article 2254 the Legislature says:

"Such acts shall have effect against third persons only from the date of their being deposited in the office of the parish recorders"—

thus limiting the effect of registry or deposit to the parishes outside of New Orleans. And in article 2262 it says the same thing with reference to the city of New Orleans, in the following language:

"In the parish of Orleans, acts, whether they are passed before a notary public or otherwise, shall have no effect against third persons, but from the date of their being deposited in the office of the register of conveyances."

And then it says in article 2266:

"The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer (parish recorder or register of conveyances.)"

These views do not conflict with article 2259 which says that it will be sufficient to register a certificate of the notary who has passed the act in New Orleans.

The act of sale under consideration was deposited in the office of the register of conveyances in the parish of Orleans and indorsed by him. It was therefore registered in accordance with the law; and plaintiff is deemed to have notice of said registry.

The judgment appealed from is affirmed.

MONROE and PROVOSTY, JJ., dissent.