REDMANN, Judge.
Plaintiff appeals from a judgment rejecting on the merits its claim to certain land also claimed (in divided portions) by defendants.
All parties’ titles are derived from Andrew T. Stafford, who first sold part of his larger tract to plaintiff’s ancestor in title, and then sold the entire tract (with exceptions) to defendants’ ancestor. The sale to defendants’ ancestor made two references to the sale to plaintiff’s ancestor: first, it excepted, though by a different and incomplete description, the portion sold to plaintiff’s ancestor; and second, it declared the sale to defendants’ ancestor was subject to the recorded sale to plaintiff’s ancestor. Perhaps the most difficult ultimate issue is whether the land involved in this suit is included in the description by which plaintiff’s ancestor bought. We conclude that, as to third persons like defendants, it is not. We therefore affirm the judgment appealed from.

Titles

Stafford acquired on July 24, 1923 a part of the rear or lake portion of Rosedale plantation in Jefferson Parish. The description referred to a 1919 Calongne survey. Stafford’s location was fixed by reference to other tracts and to Lake Pontchartrain, and his boundaries measured 602' on the south, 957' on the north (the lake), 14,250' on the west (the boundary line described as N8°W) and 14,103' on the east (S6°29'E).
(This sale purported to consummate an agreement to sell to Stafford and Alphonse K. Roy and Charles J. Derbes, which presumably explains the April 22, 1923 survey of the property by Calongne for “Stafford, Derbes and Roy” hereafter referred to in a footnote.)
Stafford sold on December 20, 1923, to plaintiff’s ancestor in title, S. F. and Vincent R. Perrin, by sale registered in the conveyance records December 29, 1923, a portion of lot 2 o'f Sec. 45, T12S R10E, “as per the survey of” parish surveyor Zander dated Dec. 14, 1923 (recited to be but not “attached hereto and made part hereof”),
“according to which survey said portion of ground begins at a distance of 14,424 ft. from the lake side of Cypress Street, and extends along a line almost due north 1,307 ft. to Lake Pontchartrain, thence west along Lake Pontchartrain in a meandering line a distance of 1,000 ft., more or less, thence south along a line parallel to the first line from Lake Pontchartrain, a distance of 1,407 ft., thence east along the proposed Hammond highway, a distance of 1,000 ft. to point of origin, said land being shown on the survey as consisting of squares Nos. 247-248-249-250-251, fronting on the proposed Hammond highway and also marsh prairie land between the squares and Lake Pontchartrain.” (Emphasis added.)
The description then added that vendor’s riparian rights were also sold to purchasers.[1]
Having apparently meanwhile made another sale of part, Stafford on April 11, 1924, by sale registered April 14, 1924, sold to Stafford, Derbes & Roy, Inc. (“SDR, Inc.”), by a description identical to that by which he had acquired (and with reference to no other survey than Calongne’s of 1919). But there was excepted from the sale “the following squares which have previously been sold * * *: Square 247 to 251 inclusive to S. F. & Vincent Perrin. Twenty-two squares to Miss Emma Coleman [not here pertinent].” (The failure to except the north marsh prairie lands conveyed with squares 247-251 is not precisely *465 pertinent since defendants’ titles do not include any of those lands.)
Later in the act, an exception to the Conveyance certificate recited the date, Notary and recordation data on Stafford’s sale to-the Perrins, immediately followed by the provision “The parties hereto declare that this sale is made and accepted subject to the existence of the foregoing inscriptions.”
(Then the act recited that Stafford was in reality the title holder for himself, Derbes and Roy as equal co-owners in in-división, and that the consideration for this sale — stock in their namesake corporation —belonged to the three equally.)

Other Facts

The trial judge personally inspected the conveyance records and found that plaintiff's act of acquisition did not have the 1923 Zander survey attached, and did not give any physical indication that the survey was ever attached.
The preponderance of the evidence is that the Hammond highway was at all times proposed to lie about 300’ from the lake shore in this area, and not 1,307 to 1,407' as plaintiff’s deed recited. Each of the several other contemporaneous surveys in evidence approximately so located the proposed highway (including a 1917 survey by Zander of an adjacent tract).[2]
Sometime after his transfer to SDR, Inc., Stafford apparently realized the inconsistency of the description in his sale to the Perrins. In 1926, the year of the Cal-ongne resubdivision placing 1000' more land south of the highway, Stafford sued the Perrins to have their title limited to land north of the highway, or to have the sale set aside for ’fraud. That suit was dismissed on exceptions of no right or cause of action and Stafford’s appeal was withdrawn by him.

Res Judicata

Because of that judgment against Stafford on his demand asserting what is presently defendants’ position here, res ju-dicata was pleaded by plaintiffs in this suit, but was rejected. We conclude the trial court was correct in rejecting this *466 plea. We indicate no view as to the correctness of the long-final judgment dismissing Stafford’s suit on exceptions. That dismissal was apparently based on the notion that the real question, the extent of land sold to the Perrins, could not be raised by Stafford since he had already sold the rest of the tract “excepting and subject to” the sale to the Perrins, and thus had no standing to seek resolution of what was at best a boundary dispute. Accordingly the Sta'fford-Perrin suit, not between the same parties and not decided on the merits, cannot support the plea of res judicata; C.C. art. 2286.

Merits

Unrecorded sales[3] and contracts affecting land are “utterly null and void” except between the parties; C.C. art. 2266. We will apply the quoted words literally and consider nonexistent (as to defendants, who are third parties)[4] the unrecorded agreement to buy and sell which culminated in the Stafford-Perrin sale. We need not inquire whether the Zander survey referred to in the recorded description but itself unrecorded is effective against third parties. Here the survey adds nothing except east-west location, which was discoverable from vendor’s own recorded title.
The more ancient (recorded) title to disputed land originating from the same owner prevails over the later title (unless the later proprietor has acquired by prescription), C.C. art. 847; the first recorded sale of the property having made it a thing belonging to another, its sale by its former proprietor would be null', C.C. art. 2452.
It accordingly is immaterial to the naked question of superiority of title whether a later sale of a remainder of a tract excepts (by good or bad description) the portion earlier sold (by recorded sale). Thus, had the sale to SDR, Inc. sold the whole tract without excepting the earlier (recorded) sale to the Perrins, the Perrins’ title would prevail because they bought from the owner, and made their purchase effective against third persons by recording, so that SDR, Inc. thereafter bought not from the owner but from the former owner. The Perrins’ acquisition would be good and SDR, Inc.’s null (as to that part of the tract the Perrins had acquired).
However, where a sale of a tract does except the entire portion conveyed by a previous sale, superiority of title is not at issue, since the later sale does not purport to convey any land conveyed by the earlier and thus the two titles do not conflict. Here, while “Squares 247-251” was a near-meaningless exception since there was not even any reference to a survey or plan establishing squares, defendants’ ancestor’s title did declare itself subject to the previously-recorded sale to the Perrins. We conclude the sale of a tract, except a portion previously sold, “subject to” the prior sale limits the later grant to land not included in the previous grant. Thus we find no conflict in the two original grants from Stafford, although the question remains, as in an action of boundary, where does the first-sold land end and the second-sold land begin?
This is a matter governed, as to third parties like defendants, by the recorded contract of sale between Stafford and the Perrins referred to in the SDR, Inc. acquisition. The critical fact is that that contract’s description gives three calls from which the south boundary of the land sold might in whole or part be determined. These three are recited as if the same but *467 in fact are not the same. The description has plaintiff’s land begin (1) 14,424' from Cypress, (2) 1,307' from the lake, but also (3) at its south boundary stated as “the line” of the proposed Hammond highway,
Even as between buyer and seller, one legislatively established rule in boundary determinations is that recited boundaries prevail over distance measurements. C.C. art. 2494 provides that when the sale is of a certain and limited body, “whether it first set forth the measure, or the designation of the object, followed by its measure, the expression of the measure gives no room to any supplement * * * nor diminution of the price * * * ” with certain exceptions. Art. 2495 provides “there can be neither increase nor diminution of price on account of disagreement in measure, when the object is designated by the adjoining tenements, and sold from boundary to boundary.” These articles expressly modify the obligation of the seller, as stated in art. 2491, to deliver “the full extent of the premises, as specified in the contract”.
Between buyer and seller the absence of recordation of writings such as the preliminary buy-sell agreement does not render such contracts “utterly null and void”, C.C. art. 2266. Thus, under circumstances providing exception to other parol evidence exclusionary rules such as that of C.C. art. 2276, the agreement to buy and sell could be admissible and retain significance between those parties as in, e. g., an action to reform the act of sale, Prejeant v. Hero Lands Co., 244 So.2d 613 (La.App.1971), or perhaps even in a simple action of boundary.
But, as to third parties, the recorded description is not thus assailable. It recites a southern boundary, and it recites distances to that boundary, and the sale is, as to third parties, a sale from boundary to boundary — -lake to proposed highway — and the “disagreement in measure” need not even be inquired into.
We view this case as fundamentally one where plaintiff’s own land description limits its land to land north of “the line” of a proposed highway and therefore defeats plaintiff’s claim (against third parties) to land south of the proposed highway.
We hold plaintiff estopped from disputing, as against a third party, its own description’s apparently unequivocal representation that plaintiff’s land is all north of the highway, having the highway as its south boundary. A third party cannot be required to conduct a survey of land, the title to which represents it (with no self-evident contradiction) as excluded from the area of the third person’s interest; it is not the third person’s obligation to verify all the calls in a description which, on its face, explicitly purports not to relate to the third person’s land interest.
The judgment appealed from correctly rejected plaintiff’s suit.
The judgment is affirmed, with, leave to the trial court to amend the judgment to reflect the substitution of parties 'for defendants deceased.
Affirmed.

. Vendor’s acquisition data was not given. Later in the act an exception on the mortgage certificate was recited as a mortgage at MOB 62 fo. 149, dated July 1923, in favor of vendor’s unnamed vendor, which mortgage was released as to the property conveyed. In fact vendor’s acquisition recited it was for cash, and this reference may have been to a separate mortgage.

. We note, as explanatory of plaintiff’s description, but we otherwise disregard it because not a recorded part of any pertinent sale, that a plan of subdivision (not a survey) by Calongne in April 1923 for Stafford (and Derbes and Roy) subdivided the original tract into lots or squares about an acre in size, specifying exact measurements of each lot and the occasional intervening areas designated for streets. That plan’s measures of the tract’s east boundary (added to the known distance to Cypress street) would give a Cypress-to-highway distance on that boundary of 14,124'. Adding to this the 300' highway width shown by Calongne gives the 14,424' distance from Cypress recited in plaintiff’s description as the beginning of plaintiff’s land (and also as the highway’s “line”). But the Calogne plan showed only an additional 300' depth as the east side line of square 247, with an insignificant further depth (perhaps 15') which might be considered marsh prairie land at the lake’s shore. The Stafford-Perrin description, however, (reciting an actual survey by Zander) correctly located the point on the east boundary 14,424' from Cypress streets as 1,307' from the lake (rather than Calongne’s approximately 315'). Thus that description (under which plaintiffs have the earlier-recorded title) is, on the ground, mathematically consistent in placing the southeast corner at 14,424' from Cypress and 1,307' from the lake (along the original tract’s east boundary) ; but it is inconsistent, on the ground, with the proposed highway’s line. (And the April 1923 Cal-ongne subdivision is consistent with the highway’s north line only in its distance from the lake, and not from Cypress street or the whole Stafford tract’s south boundary.)
While Zander used Calongne’s externally inconsistent Cypress-to-highway measurement as his beginning point, Calongne in 1926 made for Stafford, Derbes & Roy, Inc. a resubdivision utilizing the externally consistent lake-to-highway distance and revising the Cypress-to-highway measurement by adding about 1000' (changing measurements of some lots and streets etc. areas, and placing additional lots in two areas).

. More precisely, as to sales it is only the sale undeposited for recordation which is ineffective; Schneidau v. New Orleans Land Co., 132 La. 264, 61 So. 225 (1913).

. We do not inquire whether plaintiff is really a third party despite its recent purchase from Vincent Perrin in return for 833 shares of its stock plus allegedly valuable mineral interests and cash. Presumably one could not acquire the benefits of third party status by the device of transferring to a corporation of which he is the sole shareholder.