No. 10,314.

A. B. & B. WAY VS. MEYER LEVY ET ALS.,

AND

E. V. BATCHELOR ET AL. VS. A. T. WAY ET ALS.

CONSOLIDATED.

The natural tutor cannot relieve himself from responsibility to the minor by omitting to take the oath before letters of tutorship have been issued to him.

Where an act of sale reserving the special mortgage and vendor's privilege was passed and completed on Saturday, at the hour of the legal closing of the office of the Recorder of Mortgages, said act was filed by said recorder for inscription, and the inscription was made on the Monday morning following, without delay, held that this inscription preserved the vendor's privilege as against prior recorded mortgages, as it was seasonably made.

While jurisprudence establishes that the mere deposit, with a parish recorder, of an act of transfer, affects third persons, it was never settled, that, an act by which a vendor's privi-

lege and a special mortgage are retained on real estate sold to secure payment of the price on credit, deposited with and filed and indorsed by the parish recorder, on the day of its execution and transcribed on the first legal day following, does not preserve that security, for want of an actual registry, on the day of the execution of the act.

Such act, when thus deposited, filed and indorsed, produces all the effects against third parties, which would have arisen, had it been transcribed on the mortgage register, on the very day of its execution.

When deposited, it becomes part of the *archives* of the office of the parish recorder, subject to public inspection, together with the other public registry books and the date of the filing, indorsement and deposit fixes the date of the transcription made on the current register, on the first legal day following, without unnecessary delay. R. C. C. 2252, 2284, 3391.

APPEAL from the Fifteenth District Court, Parish of Pointe Coupée.
Semple, J.

---

O. O. *Provosty* for A. B. & B. Way, Plaintiffs and Appellees.

---

*Thos. H. Heeves* for Batchelor, tutrix, and Stribling, tutor, Appellants.

---

*Robt. Montgomery* for Meyer Levy, Appellees.

---

The opinion of the Court was delivered by

McEnery, J.  Plaintiffs, A. B. & B. Way, obtained a judgment against their father, A. T. Way, with recognition of their legal mortgage, for over $2700, to date from the 17th day of June, 1870.  This legal mortgage was duly recorded in the office of the Recorder of Mortgages for the Parish of Pointe Coupée.  After its recordation in the same year, on the 3d day of December, the father, A. T. Way, purchased a tract of land, in the Parish of Pointe Coupée, from Emma and Rebecca Shannon.

A special mortgage and the vendor's privilege were retained to secure the deferred payment of the purchase price.

In 1876 the mortgage was foreclosed and the land purchased by John Yoist, who afterward sold it to the defendant, Levy.

The plaintiffs, in an hypothecary action, now attempt to subject this property to their legal mortgage, because the act of sale, mortgage and vendor's privilege were not recorded on the day and date of the act.

The act was concluded on Saturday evening, late at the close of office hours, and was recorded without delay on Monday morning.

Defendants, in a separate suit, which is consolidated with this, allege that A. .T Way was never tutor, and that there is no legal mortgage if he was the duly qualified tutor, as the judgment against him was col-

lusively and fraudulently obtained, and the same allegations are made with reference to the suit of the mother of plaintiffs against their father for separation of property, which amount is the basis of the legal mortgage asserted by plaintiff.

It is alleged that A. T. Way took no oath as tutor. He took the oath before letters of tutorship issued to him, and after they were issued he took no oath or procured the appointment of an under tutor.

The tutorship belonged, of right, to the father. C. C. 250. And as such, without being confirmed, it was his duty to have an inventory made and the minors' mortgage inscribed. As a stranger to the tutorship, as an intermeddler a trust or legal mortgage would exist against him. He would have been responsible to the minors if he had refused the tutorship and neglected to record their mortgage, or to preserve their rights. C. C. 268.

He can not, by omissions, relieve himself from responsibility. Gonsoulin vs. Migues, 5 Ann. 565.

We have carefully examined the records in the suits of A. and B. Way vs. Their Father, and Amanda Boatner vs. Her Husband, A. T. Way. We have been unable to find any evidences of fraud or collusion, and the judgments in each case seem to have been rendered upon sufficient evidence.

The question now to be determined is whether or not the minors' legal mortage affects the property acquired by A. T. Way on the 3d December, 1870.

There are numerous decisions in our reports determining the question of the rank of privileges and mortgages resulting from registry.

We have attentively examined these cases, and we have found in each, different facts and circumstances attending this.

In the Sixth Annual, page 162, White vs. Bank, there was no mortgage stipulated, as is usually done in acts of sale on credit, and the act was not inscribed in the mortgage book, but in the book of conveyances. There was, in fact, no registry of the mortgage.

In Porche vs. Le Blanc, 12 Ann. 778, the vendor's privilege was contracted in the Parish of Assumption, in 1848, and recorded three years thereafter in the parishes where the properties were situated.

In Lefose vs. Carom, 7 Ann. 65, the facts were identical with those in White vs. Bank.

In succession of O'Loughline, 18 Ann. 142, the question submitted and determined was whether the vendor's privilege had been lost and the mortgage only renewed because the vendor had failed to record the privilege within six days.

In Lombas vs. Collet, 20 Ann. p. 79, the act of sale was passed 10th March, 1858, and recorded 28th February, 1859 — nearly one year thereafter.

In Twenty-eighth Annual, page 305, Bird vs. Lobdell, the contest was between a special mortgage creditor and furnisher of supplies. From the meagre facts stated in the opinion it does not appear that the privilege was deposited or filed with the recorder on the day of the date of the contract.

In the case of MacMillen vs. Archinard, 24 Ann. 610, the detailed statement of items of mechanics' lien was recorded on 23th September, 1879. The question was whether it had effect from the date the contractor commenced work, July, 1868, or only from the date of its recordation.

In Twenty-sixth Annual, page 80, Lapene vs. Meezel, there were oppositions filed to the proceeds of the sale of a lot of molasses and sugar. The two privileges which were asserted were recorded at different dates and there was a contest between laborers and merchants for priority, as to which should have preference.

In Twenty-seventh Annual, page 290, Gay vs. Borard, the point decided was whether a privilege, ranked a mortgage recorded subsequently and after its date, not recorded on the day it was contracted, had any effect at all.

In Thirty-fourth Annual, Succession Clay, it was decided that a vendor's privilege will have effect and be enforced, although not recorded on the day it was contracted, if no other creditor has acquired rights on the property affected thereby.

In Bank vs. Forbes, 27 Ann. 245, E. J. Gay & Co. were the furnishers of supplies for the year 1873, and an open account for that year was filed and recorded only in January, 1873. The mortgage of the bank was recorded in 1868.

In Morrison vs. Citizens' Bank, same volume, page 401, the vendor's privilege was contracted in New Orleans, in 1856, forwarded to Pointe Coupée, where it remained among notarial acts and was finally recorded in the mortgage book in June, 1868.

In the Twenty-third Annual, page 286, Foley vs. Hagan, the facts are not stated as to the time of recording the privileges and mortgages.

In Prager vs. Recorder, same volume, page 534, the question was whether a mortgage recorded subsequent to the recording of the privilege would not prime it because it was not recorded on the day it was entered into.

In the Slocomb case, 30 Ann. p. 833, the vendor's privilege was re-

corded in the book of conveyances, and not in the book of mortgages.

The cases above referred to are cited in case of Gianovitch vs. Gallagher, 36 Ann. 272, as authority for the ruling in that case that the act must be recorded seasonably. In that case the act of mortgage was recorded five days before the registry of the mortgage over which it took preference.

There are cases in which it is indicated if the delay in recording on the day the privilege was entered into can be satisfactorily explained, the delay will be excused and the privilege or mortgage will take effect from the day on which it ought to have been recorded.

In Crea vs. Sowles, 2 Ann. 598, the registry of the act of sale was made after an attachment had issued against the property. The court said: "In this case, as in that of Hagan vs. Williams (2 La. 122), the purchaser has failed to account satisfactorily for the delay in making the registry."

In Payne & Co. vs. Pavey, 29 Ann. 116, an hypothecary action was instituted to enforce a judicial mortgage against certain lands in the possession of the defendant, resulting from the registry, on 27th October, 1874, of a judgment obtained against the vendor of the defendant. The defendant purchased the property on 18th January, 1879, and the act was deposited in the recorder's office in the Parish of Avoyelles, on 8th February, 1872, and the act was indorsed and filed on the same day. It was recorded 18th of September, 1876, after the registration of the plaintiff's judgment.

The court said: "If there was fault, nothing in the evidence shows it to have been that of the defendant's."

In Rochereau & Co. vs. Colomb, 27 Ann. 337, the facts were that Kenner sold to Colomb immovable property, retaining the usual mortgage and vendor's privilege. The act was recorded in the Parish of St. James, ten days after its execution. The court said: "The only important question in this case is, could a judicial mortgage, resulting from the recordation of a judgment against the vendee, attach to the property to the prejudice of the vendor's privilege and mortgage to secure the price in consequence of the delay in recording the mortgage." * * "If the delay in recording the act in St. James Parish could defeat the vendor's privilege and mortgage, the necessary delay for recording the mortgage, after the agreement to sell, or after the signing of the act of sale, would also defeat the vendor's privilege."

And again, in the case of Jumonville vs. Sharp, 27 Ann. 461, the plaintiff had a judgment for a large amount against her husband, and she had to secure it a legal mortgage. The property against which she

attempted to enforce her mortgage was acquired by her husband subsequent to the date of her legal mortgage. In the sale to her husband, Vives, the vendor's privilege and special mortgage were revived. The act of sale to Vives was not recorded until 1866, five years after the purchase. The property was seized and sold to pay part of the price secured by the mortgage and vendor's privilege. It was held that the delay to record the act of sale and vendor's privilege could not defeat the vendor's privilege.

The law does not require impossibilities. Article 3393, C. C., requires the recorders to record and register the acts in the order of their dates, without leaving any intervals or blank spaces between them. Only one person can, therefore, record these acts at one time and in one book. It often happens that more acts are passed in one day than can be recorded on the day they are passed. It would be a physical impossibility, at times, to record all the acts passed on one day. All that can be required is that the act be recorded without delay, in its order, in the proper book, and in the language used in Gianovitch vs. Gallaugher, 36 Ann. 272; that it be recorded " seasonably."

In the instant case the act was completed at the closing hour of the office, fixed by law. The next day was Sunday, and it was recorded on Monday morning, without delay, and seasonably.

In the country parishes the recorders are *ex-officio* notaries. After the passing of acts it is their duty to commence to record them without delay.

Suppose an act should be finished, say at 3 o'clock, and at 4, the legal hour of closing his office, the recorder had only recorded a part of the act; could a prior recorded mortgage take precedent of the act containing the vendor's privilege?

In this case the act had been recorded, and the fees for recording paid. The recorder had commenced his duties in preparing for its recordation, by filing the act, when interrupted by the closing hour of his official duties. He resumed his work of recordation as soon as practicable. The defendants were certainly in no default, nor was the officer. The act was filed and deposited on the day it was made, and the inscription made without delay, continuing, with legal interruption, from the closing hour of one business day to the beginning of the next succeeding business hour. The indorsement is a part of the work, preliminary to the inscription, because the law requires it.

It is, therefore, ordered and adjudged that the judgment appealed from be amended so as to reinstate the full amount of the minors'

mortgage—$2721 98—and in other respects it be affirmed, plaintiffs and defendants to pay costs, equally, of the appeal.

## ON APPLICATION FOR REHEARING.

BERMUDEZ, C. J. It would be doing violence to the views which we have expressed to say that we have held that the depositing of the act with the recorder and the filing of it by him, operates a recordation of it, binding on third parties, without any subsequent registry.

A scanning of all the precedents having a bearing on the question, particularly those relied upon by the litigants, enables us to state, that, in none of the rulings heretofore made, the facts considered were analogous with those presented in this controversy.

It is perfectly true that, in many of the cases, acts had been first deposited with the recorder which were subsequently transcribed on the register, and that it has been held, that, as concerns the conveyance of real estate, the mere depositing of the act of transfer with the recorder, was equivalent to a recordation of it, by him, in the conveyance book and would affect third parties, who, from the mere deposit, must be deemed as notified of the transfer.

It is likewise true that it has been decided that such is not the case, when the encumbrance of real estate by privileges or mortgages is the object of the act, and that not only must the deed be deposited with, but also recorded by, the recorder in the manner and within the time prescribed by law to preserve the encumbrance from the effect of previous registries, particularly as relates to the vendor's privilege, which the law requires not only to be recorded, but also to be thus made patent, within a fixed delay.

In no case presented and passed upon, does it appear that the act containing the encumbrance, privilege or mortgage, or both, was deposited with the recorder, on the very day of its execution, just about the time fixed by law for closing his office, filed and endorsed by him on that day and recorded in full on the first legal day following.

In all those cases, one or more days on which the act would have been recorded in the mortgage book, had elapsed without any recordation having been made.

In the present litigation, it appears that the act of sale to Way, in which the vendor's privilege and a special mortgage had been retained to secure payment of the price, on time, was executed before a notary public, and was completed some short time before the closing of the recorder's office on Saturday, the 3rd of December, 1870 ; that it was, on being handed to him, then filed and endorsed on that date ; also, that it

was on that day, recorded in the conveyance book; that at or after 4 o'clock, at which hour the recorder was authorized to close his office, R. S. 3076, he and deputy left; that on the Monday following, December 5th, 1870, Sunday, a *dies non*, having intervened, the act was recorded in the mortgage book.

The question now at issue is not so much: whether the deposit and filing of the act on December 3, 1870, constitute a recordation, without any subsequent inscription, as it is simply: whether the registry made on Monday, the 5th of December, 1870, the day immediately following the Saturday, when the filing and endorsement of the act and its transcription took place in the conveyance book, is or not to be considered as having been made on Saturday, the 3rd of December, 1870, and as affecting third persons from that day.

The true object of registry laws concerning real estate is to notify third parties that the property has been transferred or encumbered.

Hence, parties who have an interest in ascertaining the *status* of real estate in those respects, have the right of inspecting, during office hours, the archives of the office in which the law requires that such transfers and encumbrances be made public, and are bound by the contents of those archives if they are such as convey with precision and all sufficient *data*, knowledge of a transfer, or encumbrance, or both. The converse of the proposition is likewise true. R. S. 3082; R. C. C. 3391, § 2.

Now, let us examine and see whether any third party entering, for the purpose of an inspection of the archives, the office of the recorder could have on Saturday, the 3rd of December, 1870, ascertained from them, just before the closing of the office, the status of the property in question in point of transfer and of encumbrance.

It cannot be, nor is it, for an instant denied, that the conveyance could have been known, for the act of sale, it is shown, was recorded in the proper conveyance book on the same day that it was received, filed and endorsed.

It is clear that, on that day, at the closing of the office, the act had not been inscribed at all in the mortgage book.

Under that condition of things can it be said that any third party could not then have ascertained the encumbrance as fully as if the act had been inscribed in the mortgage book?

The laws in force at the time of these occurrences are to be found in R. S. 2501, 2502, 3080, 3081, and in the R. C. C., at Articles 2251, 2252, 2254.

It is made the duty of all notaries in the State, *out* of New Orleans,

to *deposit* in the office of the parish recorder all acts passed before them, except such as were executed under judicial authority.

The acts thus deposited in the office of the parish recorder form part of the *archives* of his office and are to be immediately recorded, conveyance acts in the conveyance book, and encumbrance or mortgage acts in the mortgage book.

The recorder must indorse on the back of each act deposited with him, the *time* it was received. by him, and to record the same without delay in the order in which they were received, and the acts shall have effect against third persons from the date of their being deposited in his office.

The law requires from parish recorders, that they shall set down the title of the different acts transmitted to them to be recorded, as well as the date of such transmission, for the purpose of establishing with *exactness* the time thereof. R. C. C. 3391.

Now, it appears that the notary before whom the act to Way was passed, deposited it in the recorder's office on the very day of its execution, and that it was then and there filed and indorsed. .

Under the provisions of law referred to, the moment the act was thus deposited, filed and indorsed, it became part of the *archives* of the office, R. C. C. 2252, and, as it *concerned* immovable property, it then affected third persons, R. C. C. 2264.

The law gave it that effect, for the reason, that any person, entering the office of the recorder for information, could have ascertained from its *archives*, part of which this act constituted, by inspection of the same, that the property conveyed had not been paid for in cash, but that a privilege and mortgage had been retained on it to secure the payment of the price on credit and that the same encumbered it.

It irresistibly occurs and forces itself on our mind, that, on inspection and consideration of the laws which require a parish recorder to indorse on each act deposited with him the *time* when it was received by him, R. C. C. 2254, R. S. 3081, it was for the purpose of establishing with exactness the *time* of the transmission, R. C. C. 3391, in order to settle with certainty the date to be given to the subsequent recordation of the act on the current register, whether the conveyance or the mortgage book.

It could have no other object, in exacting that formality. Otherwise, why would the ceremony have been required?

Under the circumstances, we conclude that, as the act to Way was deposited with, filed and indorsed by, the recorder on the day of its execution, and transcribed in the mortgage book on the following legal day, without unnecessary delay, the act must be deemed as having been

recorded on the day on which it was deposited, filed and indorsed, and consequently that the privilege of vendor and the special mortgage, secured by it have, from that date, affected third parties and are not impaired by anterior registries.

Rehearing refused.