ODOM, Justice.
 

 This is a petitory action. Plaintiffs alleged that they were the owners of certain lands in the Parish of Terrebonne, which lands were originally acquired by patent from the State by F. H. and J. A. Quitman; that, in a partition proceeding styled “F. H. Quitman v. Mrs. Eliza Quitman”, F. EL Quitman became the owner of the property involved by virtue of a deed executed by the sheriff, pursuant to an order of court; that W. S. Lovell, ancestor of plaintiffs, acquired the property at a tax sale on April 30, 1883, and that on June. 8, 1895, the property was adjudicated to the State for the unpaid taxes of 1894, and that on January 12, 1938, plaintiffs redeemed the land from
 
 *548
 
 the State by paying into the State Treasury •the sum of $65.12, this being the 'full amount due for the taxes, interest, penalties, and costs for the year 1894, as per certificate of redemption executed by the Register of the State Land Office, a certified copy, of which certificate they attached to their petition as a part thereof.
 

 Plaintiffs alleged on information and belief that William Vizard and Andrew Fitzpatrick were, when the suit was filed, in actual physical possession of the land, which they claimed to own by virtue of a deed executed on August 18, 1911, by the Bank of Houma, conveying the land to them, which deed is duly recorded in the conveyance records of Terrebonne Parish. Plaintiffs further alleged that the title which defendants claim to hold under that deed is invalid, and that defendants’ claim to the land is without sound basis in law, .and for that reason defendants have no right to remain on said property.
 

 Plaintiffs alleged that on May 2, 1916, the defendants sold all of the cypress timber on certain portions of the land for .$8,000 cash, and that on February 10, 1927, they sold the cypress timber on other portions of the land for $8,750, and that in 1935 defendants leased the land to a Texas concern for mineral development, for which lease they received cash bonuses and have since received $8,561.40 as delay rentals.
 

 They prayed for judgment recognizing them to be the owners of the land, and for •a money judgment against the defendants for the amounts which they received for the timber sold and the amounts received as delay rentals under the mineral lease.
 

 The defendants filed answer, denying specifically plaintiffs’ allegations of ownership. .They alleged that they owned the land, having acquired it in good faith from the Bank of Houma on August 18, 1911; that the Bank of Houma traces its'title through mesne conveyances to the Atchafalaya Basin Levee District, which sold the land to Edward Wisner on March 23, 1901. They attached to, and made a part of, their answer a certificate of the Register of the State Land Office, dated February 14, 1912, certifying that the records of the Land Office showed that the land had been conveyed to the Atchafalaya Basin Levee District, which certificate was recorded in the conveyance records of Terrebonne Parish on February 19, 1912. They alleged that this certificate, duly recorded, was in fulhcompliance with Act 316 of 1926 and cured any defects in their title which might otherwise have existed, and further averred that they purchased the land in good faith for a valuable consideration, had acquired a just title thereto, and that, ever since they acquired title on August 18, 1911, they had been in continuous, uninterrupted, peaceful, public possession of the property. They admitted that in 1916 and in subsequent years they sold timber from the land, and that they leased the land to a Texas concern for mineral development, all as alleged by plaintiffs. They pleaded the prescriptions of 10 and 30 years acquirendi causa and liberandi causa. They prayed that plaintiffs’ demands be rejected and that their suit be dismissed, and that defendants be decreed to be the owners of the property.
 

 
 *550
 
 There was judgment rejecting plaintiffs’ demands and decreeing the defendants to be the owners of the land involved. From this judgment the plaintiffs appealed.
 

 Defendants concede that the property in controversy was owned by William S. Lovell, the ancestor of plaintiffs, prior to June 8, 1895, on which date it was adjudicated to the State for the due and unpaid taxes of 1894. The validity of this tax adjudication is not disputed by either the plaintiffs or the defendants.
 

 Plaintiffs’ contention is that the State never actually parted with title to the land, and that the land was subject to redemption by them as heirs and legal representatives of William S. Lovell, the original tax debt- or, on January 12, 1938, on which date they redeemed it by paying into the State Treasury the full amount of the taxes for the year 1894, plus interest, penalties, and costs, as shown by the certificate of redemption executed by the Register of the State Land Office.
 

 If, as alleged and now contended by plaintiffs, the State never made an “actual conveyance” of the land to the Levee District, plaintiffs’ title would seem to be valid, because their ancestor, William S. Lovell, was the owner of the property prior to its forfeiture to the State, and the effect of the redemption of it from the State by plaintiffs in 1938 was to restore the title to the heirs and legal representatives of the original tax debtor.
 

 The Atchafalaya Basin Levee District was created by Act 97 of 1890. The lands here involved are in that Levee District. Section 11 of the act creating the District provided that all the lands then belonging to, or that might thereafter belong to, the State, and embraced within the Levee District, “shall be, and the same hereby are given, granted[,] bargained, donated, conveyed and delivered unto said Board of Levee Commissioners”, whether such lands were originally granted to the State by Congress or whether such lands had been forfeited to, or bought in by or for, or sold to, the State at tax sales for nonpayment of taxes. It was provided, however, that, as to lands which had been forfeited to the State for nonpayment of taxes, conveyances to the Levee Commissioners should not be made until “after the period of redemption shall have expired”. It was provided that any and all former owners of lands which had 'been forfeited to the State for nonpayment o'f taxes might, at any time within six months after the date of the passage of the act, redeem said lands by paying to the Treasurer of the State all taxes, interest, costs, and penalties due thereon down to the date of redemption, and that such redemptions should be deemed and taken to be sales of land by the State. Section 11 of the act further provides that:
 

 “After the expiration of said six months it shall be the duty of the Auditor and the Register of the State Land Office on behalf of and in the name of the State, to convey to the said Board of Levee Commissioners by proper instruments of conveyance the lands hereby granted or intended to be granted and conveyed to said board, whenever from time to time said Auditor and said Register of the State Land Office, or
 
 *552
 
 either of them, shall be requested to do so by said Board of Levee Commissioners, or by the president thereof.”
 

 In discussing the question of title of the parties litigant to the property in question, counsel for plaintiffs says in his brief at page 6: “The answer to this issue depends upon whether there was an actual conveyance by the State of Louisiana to the Atchafalaya Basin Levee District of the property formerly belonging to William S. Lovell, the ancestor of the present plaintiffs. If there was an actual conveyance to the Atchafalaya Basin Levee District of this property, then of course, the Register of the State Land Office was without power to redeem it to the heirs of William S. Lovell. On the other hand, if there was never an -actual conveyance of the property to the Atchafalaya Levee District, and the property remained that of the State of Louisiana, then the heirs of William S. Lovell had the right to redeem it, and the redemption executed in Decembér [January], 1938, had the effect of vesting title in the heirs of William S. Lovell.”
 

 It thus appears that counsel for plaintiffs concedes that the question whether there was an “actual conveyance” of the property to -the Atchafalaya Levee District is one of the vital issues to be determined by the court, because, if there were such “actual conveyance”, the Register of the State Land Office was without authority or power to permit the heirs of William S. Lovell to redeem the land. Counsel for defendants concede, of course, that this is a vital issue, their contention being that there was an “actual conveyance” to the Levee Board by the State after the redemptive period of the land from the State had expired, and that such “actual conveyance” was made prior to 1912.
 

 At the trial of the case, in'order to show that there had been an “actual conveyance” of the land to the Levee District, counsel for defendants filed in evidence the certificate of the Register of the State Land Office mentioned above herein. This certificate was the only evidence of the conveyance available to defendants at the time the case was tried.
 

 Counsel for defendants in answer to the appeal allege that, since the trial of the case was concluded and after the judgment was signed, a deputy clerk of the District Court of Terrebonne Parish, where the land is situated, discovered a document dated November 10, 1896, purporting to have been signed by W. W. Heard, State Auditor, formally transferring the lands involved to the Atchafalaya Basin Levee District, as provided for in Act 97 of 1890. They ask that the case be remanded to the district court in order that they may introduce and file in evidence and make a part of the record the said document. They attached the newly discovered document itself to their motion to remand, together with an affidavit made by Herbert C. Wurzlow, which shows that he had been deputy clerk of court continuously since the year 1924; that on October 3, 1941, “while examining a lot of old loose papers contained in card-board boxes which had been stored in the basement vault of the Clerk’s Office after the completion of the New Courthouse in 1938, affiant proceeded.to open a
 
 *554
 
 •.rolled package of papers labeled ‘Police Jury Meetings, etc.’, and discovered two documents, one following the other, purporting to be original transfers by the State of Louisiana to the Board of Commissioners of the Atchafalaya Basin Levee District, dated November 10th, 1896 and September 28th, 1899, respectively, and purporting to have been signed by W. W. Heard, Auditor”. Mr. Wurzlow further states in his affidavit that the documents bore no filings or certificates of recordation “other than a pencil memorandum ‘For recordation 4/21/03 C. A. Celestin’, on the back of the one dated September 28th, 1899”. He further certified that the conveyance records of the Parish of Terrebonne do not disclose that these documents had been placed of record, and that upon his discovery of them he exhibited them to Mr. Claude Ellender, one of the attorneys for the defendants, who suggested that he file and record them, and that he did so. The document dated November 10, 1896, purports to be a formal transfer by the Auditor of the lands here involved to the Levee District.
 

 The newly discovered document, if it is in fact what it purports to be, relates to a material issue involved in the case and should be filed in evidence and become a part of the record. Counsel for both sides concede that, if the document is to be introduced and filed in evidence and is to become a part of the record of the case, the case should be remanded in order that it be introduced in evidence and in order that both sides be afforded an opportunity to introduce evidence pertinent to the subject matter of such newly discovered evidence.
 

 It is therefore ordered that the case be remanded to the district court for the purpose of affording to defendants-appellees . an opportunity to introduce, file in evidence, and make part of the record in this case the newly discovered document referred to, and for the purpose of permitting both sides to this litigation to offer any competent evidence pertaining to the circumstances relating to the discovery of the document, and evidence showing the marks or filings thereon, if any, and such other competent evidence as may be available touching the question of the verity of the document and as to why it was not recorded, etc. It is further ordered that said document, together with the testimony taken in connection therewith, be sent up to this court and filed by the clerk as part of the original transcript.