CARTER, Judge.
This is an appeal from a judgment in favor of plaintiffs, hereinafter referred to as the Delernos[1], and against defendant, *184 Coastal States Gas Producing Company[2], hereinafter referred to as Coastal, adjudicating Coastal accountable unto plaintiffs for production from a well located on a tract of land[3] in Terrebonne Parish, and awarding a money judgment in favor of plaintiffs. The production was sold and marketed by Coastal under a lease from Louisiana Land and Exploration Company.
Plaintiffs brought this action in quasi contract for unjust enrichment seeking an accounting and money judgment against defendant Coastal for oil, gas and other hydrocarbons produced, sold and marketed by Coastal from a well designated as Coastal States-Emerald Oil L.L. & E. # 1 in the Lake Boudreaux Field. The prayer of plaintiffs’ petition makes no demand for a recognition of the title or for possession, but claims an accounting is owed for the minerals extracted from the land. The accounting that plaintiffs seek is for that portion of the proceeds from the well attributable to this particular piece of property from first production in April, 1973, until December 31, 1979, together with legal interest from time of production.[4]
Both the Delernos and Louisiana Land & Exploration Company (L.L. & E.) trace their title to a common ancestor, namely Joseph Delerno. Joseph Delerno lost title to the property on June 18, 1898 when the property was adjudicated to the State of Louisiana for unpaid taxes. Thereafter, on September 28, 1899, the State auditor executed an instrument of conveyance to the Atchafalaya Basin Levee District pursuant to the provisions of Act 97 of 1890.[5] From *185 thence forward the problems developed, On December 4, 1940, the Delerno heirs obtained a redemption deed from the State of Louisiana under LSA-R.S. 47:2224[6] and *186 this instrument was duly filed and inscribed in the conveyance records. On October 3, 1941, the “1899 deed” was discovered by Herbert C. Wurzlow, Chief Deputy Clerk of Court for Terrebonne Parish, in a cardboard box in the Clerk of Court’s office, together with another original instrument of conveyance from the State to the Levee District dated November 10, 1896. These deeds were rolled in papers labeled “Police Jury Meetings, etc.” in a box containing Police Jury records in the basement vault of the Clerk’s office. There was no notation on the 1896 deed (which dealt with other properties), but on the back of the “1899 deed” in pencil was written “For Recordation 4/21/03 C.A. Celestin” (C.A. Celestin was the Terrebonne Parish Clerk of Court). On October 3, 1941, both deeds were indexed and inscribed in the conveyance records of Terrebonne Parish. For some unknown and unexplained reason, the “1899 deed” and the 1896 deed were not inscribed in the conveyance records of Terrebonne Parish on April 21,1903 or thereafter, until October 3, 1941.
The trial court held that the 1899 conveyance from the State of Louisiana to the Levee Board did not comply with the requirements of Act 97 of 1890 in that the deed was not inscribed in the conveyance record, was not “properly recorded”, and that title remained in the State of Louisiana and was thereafter properly redeemed by the plaintiffs prior to the discovery and recordation of the 1899 deed. The trial court further held that the redemption deed from the State of Louisiana to the Delerno heirs on December 4,1940 was valid, resulting in plaintiffs being the present owners of the property and entitled to the relief prayed for. The trial court also held that Coastal had failed to show that its lessor, L.L. & E., had acquired title to the property by acquisitive prescription of ten and thirty years, and rejected Coastal’s reconventional demand for production costs on the grounds that Coastal had prior knowledge of plaintiffs’ adverse claim and had acted in bad faith. Legal interest was awarded from date of production on the grounds that plaintiffs’ action was for an accounting.
SPECIFICATIONS OF ERROR
Appellants contend that the trial court erred in the following particulars:
(1) In holding that the redemption deed to the Delerno heirs was valid;
(2) In holding that delivery of the 1899 deed to the Clerk of Court and its endorsement by the Clerk of Court “For Recordation” in 1903 was not effective to vest title of the property in the Levee District under Act 97 of 1890.
(3) In failing to hold that the physical presence of the 1899 deed in the Clerk of Court’s office and its endorsement “For Recordation” by the Clerk of Court *187 (which occurred prior to the redemption by the Delerno heirs) vested title to the property in the Levee District under Act 97.
(4) In holding that L.L. & E. had not acquired ownership of the property by ten and thirty years acquisitive prescription;
(5) In denying Coastal recovery on its reconventional demand for production costs because of its prior knowledge of plaintiffs’ adverse claim;
(6) In awarding legal interest on amounts recovered from the date the defendants received the amount for which it was ordered to account.
It is readily apparent that the first three specifications of error are so intertwined that the first issue to be resolved is whether the 1899 deed from the State of Louisiana to the Board of Commissioners of the Atchafalaya Levee District is to be given legal effect. To reach this determination it is necessary to determine whether the 1899 deed was recorded in Terrebonne Parish within the meaning of Act 97 of 1890. If the 1899 deed is considered to have been recorded within the meaning of Act 97 of 1890, then the recordation would have occurred prior to the redemption deed from the State of Louisiana to the Delernos on December 4, 1940. If the 1899 deed was “recorded” within the meaning of Act 97 of 1890, there is no question that the redemption deed from the State of Louisiana to the Delerno heirs is invalid.
The Delernos contend, and the trial court agreed, that the Louisiana Supreme Court decision in Lovell v. Fitzpatrick, 202 La. 545, 12 So.2d 267 (1943), after remand, 211 La. 262, 29 So.2d 843 (1947), is distinguishable from the instant case. Appellee contends that Lovell, supra is indistinguishable from the facts of the instant case.
It is of interest to first note that although a different deed from the State of Louisiana to the Atchafalaya Levee District was involved in Lovell, the deed in Lovell dated November 10, 1896, was found by Herbert Wurzlow, Chief Deputy Clerk of Court of Terrebonne Parish, at the same time and in the same place as the 1899 deed involved in this case. However, at the time that Lovell first proceeded to trial, Herbert Wurzlow had not discovered the packet containing the 1896 and the 1899 deeds. Sometime after Lovell had been tried and while the case was on appeal, the deeds were discovered and the case was remanded to allow the defendant appellees an opportunity to introduce, file in evidence, and make part of the record the newly discovered deeds and to permit both sides to offer any competent evidence pertaining to the discovery of the deeds, evidence showing any marks or filing thereon, if any, and such other competent evidence on the question of the verity of the documents and on why they were not recorded, etc.
Briefly stated, the facts in Lovell are as follows: This was a petitory action with both plaintiff and defendants tracing their title to a common ancestor, namely W.S. Lovell. On June 8, 1895, the W.S. Lovell property was adjudicated to the State of Louisiana for unpaid taxes for the year 1894. On November 10, 1896, the State of Louisiana transferred by act of conveyance to the Board of Commissioners of the At-chafalaya Basin Levee District the property in controversy. However, the instrument was not inscribed in the conveyance records. On January 12,1938, the Lovells obtained a redemption deed from the State of Louisiana and had the redemption deed recorded. Defendants, the Fitzpatricks, traced their title through mesne conveyances to the At-chafalaya Basin Levee District. On February 14, 1912, a certificate was obtained from the Register of the State Land Office certifying that the records of the Land Office showed that the land had been conveyed to the Atchafalaya Basin Levee District, which certificate was duly recorded in the conveyance records of Terrebonne Parish on February 19, 1912. The issue in the Lovell case, as in the instant case, was whether there was a valid and actual conveyance of the land to the Levee District. If the Levee District obtained title, the Fitzpatricks would have superior title, and if the Levee District had not obtained legal *188 title, the Lovells had superior title. Stated another way, the issue depended upon whether there was an actual conveyance by the State of Louisiana to the Atchafalaya Basin District of the property formerly belonging to William S. Lovell, ancestor in title of the plaintiffs. If • there was an actual conveyance to the Atchafalaya Basin Levee District of this property, then of course, the Register of the Land Office was without power to allow a redemption of it by the heirs of William S. Lovell. On the other hand, if there was never a legal conveyance of the property to the Atchafalaya Levee District and the property remained with the State of Louisiana, then the heirs of William S. Lovell had the right to redeem it, and the redemption executed in January of 1938 had the effect of vesting title in the heirs of William S. Lovell. The vital issue to be determined in the case was whether there was an “actual conveyance” of the property to the Atchafalaya District.
In its original consideration of this case, the Supreme Court stated 12 So.2d at page 269:
“At the trial of the case, in order to show that there had been an ‘actual conveyance’ of the land to the Levee District, counsel for defendants filed in evidence the certificate of the Register of the State Land Office mentioned above herein. This certificate was the only evidence of the conveyance available to defendants at the time the case was tried.
“Counsel for defendants in answer to the appeal allege that, since the trial of the case was concluded and after the judgment was signed, a deputy clerk of the District Court of Terrebonne Parish, where the land is situated, discovered a document dated November 10, 1896, purporting to have been signed by W.W. Heard, State Auditor, formally transferring the lands involved to the Atchafala-ya Basin Levee District, as provided for in Act 97 of 1890. They ask that the case be remanded to the district court in order that they may introduce and file in evidence and make a part of the record the said document. They attached the newly discovered document itself to their motion to remand, together with an affidavit made by Herbert C. Wurzlow, which shows that he had been deputy clerk of court continuously since the year 1924; that on October 3,1941, ‘while examining a lot of old loose papers contained in card-board boxes which had been stored in the basement vault of the Clerk’s Office after completion of the New Courthouse in 1938, affiant proceeded to open a rolled package of papers labeled ‘Police Jury Meetings, etc.’, and discovered two documents, one following the other, purporting to be original transfers by the State of Louisiana to the Board of Commissioners of the Atchafalaya Basin Levee District, dated November 10th, 1896 and September 28th, 1899, respectively, and purporting to have been signed by W.W. Heard, Auditor.’ Mr. Wurzlow further states in his affidavit that the documents bore no filings or certificates of recordation ‘other than a pencil memorandum ‘For recordation 4/21/03 C.A. Celestin’, on the back of the one dated September 28th, 1899’. He further certified that the conveyance records of the Parish of Terrebonne Parish do not disclose that these documents had been placed of record, and that upon his discovery of them he exhibited them to Mr. Claude Ellender, one of the attorneys for the defendants, who suggested that he file and record them, and that he did so. The document dated November 10, 1896, purports to be a formal transfer by the Auditor of the lands here involved to the Levee District.”
In its original consideration of Lovell, the Supreme Court stated that if the newly discovered document is in fact what it purported to be, it related to a material issue in the case and should be filed into evidence and become a part of the record. The Supreme Court remanded the case for introduction of the newly discovered document and for both sides to offer any competent evidence pertaining to discovery of the document and evidence showing the marks or filings thereon, if any, and any such other competent evidence available concerning *189 the verity of the document and why it was not recorded, etc.
In its final consideration of Lovell[7], the Supreme Court stated 29 So.2d at page 843:
“This is a petitory action involving lands in Terrebonne Parish. The case was here in 1943 (202 La. 545, 546, 12 So.2d 267), at which time it was remanded to the district court to receive in evidence a newly discovered document which was decisive of the case.
“The plaintiffs’ title was dependent upon the lack of an instrument of conveyance from the State of Louisiana to the Atchafalaya Basin Levee District.
“The missing document was discovered after the case was tried in the district court. It is an original instrument of conveyance of certain lands, including the lands in contest here, by the State of Louisiana, through the agency of the State Auditor at that time, W.W. Heard, to the Atchafalaya Basin Levee District. The document was recorded immediately after it was discovered and was filed in evidence by the defendants after this case was remanded. The signatures thereon were proven genuine. In fact the plaintiffs have not objected to the authenticity of the instrument, which establishes the validity of the defendants’ title. We conclude, therefore, that the defendants are the owners of the land in litigation.”
From the above, it is clear that the Louisiana Supreme Court, having before it the entire evidence available in the case and more specifically the “misplaced act of conveyance”, concluded that the requirements of Act 97 of 1890 for an “actual conveyance” had been met, that the fact that the act of conveyance was found in the basement vault of the Clerk of Court’s office (though not inscribed in the indices or conveyance books), was sufficient evidence to presume that recordation had been effectively accomplished and the requirements of Act 97 fullfilled.
A close examination of both Supreme Court decisions in Lovell convinces us that the facts of Lovell are indistinguishable from the facts of this case except in two particulars. In Lovell, there was no notation or writing (no indorsement on front or back) on the deed from the State to the Levee Board dated November 10, 1896, but in the instant case, there was written in pencil on the back of the deed, “For recor-dation 4/21/03 C.A. Celestin.” Secondly, in Lovell, there was filed and recorded in the conveyance records of Terrebonne Parish on February 19, 1912 (prior to the attempted redemption by the Lovell heirs) a certificate certifying that the records of the Land Office showed that the land had been conveyed to the Atchafalaya Basin Levee District.
In the instant case there was no certificate filed prior to the attempted redemption by the Delerno heirs, and the property involved in the instant proceeding was not listed in the certificate of the Register of the State Land Office that included the property contained in the 1896 deed. Neither of these distinctions makes Lovell inapplicable to the instant case. Concerning the absence of the notation “For recordation 4/21/03 C.A. Celestin” on the back of the Lovell deed, apparently the Supreme Court considered this of no consequence in complying with Act 97 of 1890 and concluded that the presence of the deed in the possession of the Clerk of Court was sufficient to constitute recordation and an act of conveyance. The fact that this indorsement by the Clerk of Court was found on the back of the deed in the instant case makes it even more demanding that we follow the rationale in Lovell.
Appellee strenuously contends that the presence of the recorded certificate from the Register of State Land was significant in the Supreme Court’s decision in Lovell. However, Act 97 of 1890 required that the conveyance be recorded as a prerequisite to the vesting of title in the Levee District. If the certificate of the State Land Office satisfied this requirement, it would have been unnecessary for the Supreme Court to remand the case for the express purpose of *190 allowing the introduction of the newly discovered deed (act of conveyance). Our reading of Lovell is simply that once it is established that an instrument is determined to be in the possession of the recorder, the instrument is considered to have been properly filed and recorded with the Clerk of Court absent competent evidence concerning the verity of the document and as to why it was not timely inscribed in the official records.
The facts in the instant case are uncon-tradicted that the 1899 deed was discovered by Herbert Wurzlow, Deputy Clerk of Court, on October 3, 1941 in the Clerk of Court’s possession; that the deeds were in a cardboard box in the Clerk of Court’s office and were wrapped in a sheet of paper labeled “Police Jury Meetings, etc.”; and that the then Clerk of Court, C.A. Celestin endorsed on the back of the 1899 deed in pencil “For recordation 4/21/03 C.A. Celes-tin”. This is sufficient to comply with Act 97 of 1890. The fact that the deed was discovered in a box labeled “Police Jury Meetings, etc.” and the fact that the notation was in pencil and the instrument did not bear the “official seal” of C.A. Celestin are not proof that the instrument was filed in some place other than the recorder of mortgages’ office and are insufficient to overcome the presumption that public officials discharge their duties of performing acts required by law in accordance with the law and authority conferred upon them. Verret v. Norwood, 311 So.2d 86 (La.App. 3rd Cir.1975), writ refused, 313 So.2d 842 (La.1975); Vaughan v. Dowling, 243 La. 390, 144 So.2d 371 (1962); Wright v. Cyprian, 96 So.2d 882 (La.App. 1st Cir.1957), writ denied, November 12, 1957. This is true especially in view of the fact that the box was found in the possession of the Clerk of Court (in the absence of evidence showing any connection between Mr. Celestin and the Police Jury) and in view of Mr. Wurz-low’s testimony that numerous other documents were found that had not been actually inscribed in the conveyance records. We are unaware of any requirements which demand a sacramental type of wording that the Clerk must use, nor are we aware of any requirement that the writing must be in ink, typewritten, etc. by the Clerk of Court’s office in recording deeds deposited with the Clerk of Court for indorsement and recordation. Additionally, these facts do not constitute proof that this deed was received by Mr. Celestin somewhere other than in his office of Clerk of Court of Terrebonne Parish. It is interesting that counsel for appellee strenuously contends that some significance should be placed on the fact that the language “For recordation” appeared on the back of the instrument when La.C.C. art. 2254 expressly provides “It shall be the duty of the recorder to endorse on the back of each act deposited with him at the time it was received by him, . . . ”. To be successful, plaintiff must establish by competent evidence that the instrument in question was not deposited with the Clerk of Court for recordation. This, plaintiff has failed to do.
We are convinced, as apparently the Supreme Court was convinced in Lovell, that the language of Act 97 of 1890 providing
“. . . and thereafter said president of said Board shall cause said conveyances to be properly recorded in the Recorder’s Office of the respective parishes wherein said lands are or may be located and when said conveyances are so recorded, the title of said land with the possession thereof shall from thenceforth vests absolutely in said Board of Levee Commissioners, its successors or grantees; ... ”,
sets forth the same requirements for these deeds as for conventional deeds of conveyances, etc. LSA-C.C. arts. 2254, 2264 and 2266[8] which set forth the requirements for *191 conventional conveyances only require deposit in the proper office and indorsement by the proper official. For conventional conveyances, the jurisprudence has always protected the parties who properly deposit an instrument and have it indorsed by the Clerk of Court, even though it is later not properly indexed or inscribed in the actual conveyance book. See Payne v. Pavey, 29 La.Ann. 116 (1877). It is the responsibility of the Clerk of Court and Recorder of Mortgages to properly do his job. The person who deposits and has indorsed an instrument for recordation and who can subsequently prove these facts is not prejudiced if the Clerk of Court misplaces the instrument or otherwise disposes of it.
It is horn book law and a long recognized rule of property that a deed of conveyance is valid as to third parties and the world when the deed of conveyance is deposited with the Clerk of Court and recorder of mortgages and endorsed by the Clerk and recorder, and once deposited and endorsed the instrument shall have effect against third parties from the date of the deposit in the office of the parish recorder, whether the instrument is ever actually inscribed and/or transcribed in the indices and the recorder’s office. Schneidau v. New Orleans Land Co., 132 La. 264, 61 So. 225 (1912); Way v. Levy, 41 La.Ann. 447, 6 So. 661 (1889); Lewis v. Klotz, 39 La.Ann. 259, 1 So. 539 (1887); J.U. & H.M. Payne & Co. v. Pavey, 29 La.Ann. 116 (1877); Wood Preserving Corporation v. Mitchell Tie & L. Co., 167 So. 122 (La.App. 1st Cir.1936); LSA-C.C. arts. 2254, 2264, 2266; LSA-R.S. 9:2721. Therefore,.once an act of sale has been deposited in the office of the recorder of mortgages and endorsed by a proper officer, it is registered (recorded) in accordance with the law and third parties are deemed to have notice of said registry. Opelousas Finance Co. v. Reddell, et aL, 9 La.App. 720, 119 So. 770 (1929); Schneidau v. New Orleans Land Co., supra.
Many decisions interpreting Act 97 of 1890 and other similar acts pertaining to Levee Districts clearly provide that the grant of lands made by the State to the board of commissioners of a levee district is not a grant in praesenti, but is intended to vest in the grantee a disposable title only when proper instruments of conveyance, executed by the State Auditor and Register of the State Land Office, are recorded in the parishes where the lands lie.
Numerous cases interpreting the act have language to the effect that title to the lands does not vest in the Levee Board until the conveyance thereof has been executed by the proper State offices and duly recorded in the parish record. State v. Aucoin, 206 La. 787, 20 So.2d 136 (1944); Atchafalaya Land Co. v. Dibert, Stark & Brown Cypress Co., 157 La. 689, 102 So. 871 (1925); Hartigan v. Weaver, 126 La. 492, 52 So. 674 (1910); St. Paul v. Louisiana Cypress Lumber Co., 116 La. 585, 40 So. 906 (1906).
*192 Therefore, considering all of the above, it is clear that based on the general law pertaining to conveyances of immovable property in the State of Louisiana, that appel-lee, Coastal, must prevail since the deed of conveyance from the State of Louisiana to the Atchafalaya Levee Board predated the Delerno deeds and was deposited with Mr. C.A. Celestin, Clerk of Court, Recorder of Mortgages of Terrebonne Parish (For recor-dation 4/21/03 C.A. Celestin), even though the deed was not inscribed in the indices and actual conveyance books until October 3, 1941. As previously noted, the deposit with and endorsement by the recorder of mortgages is sufficient to put third parties and the world on notice from the date of the deposit and endorsement whether the instrument is ever actually inscribed in the indices or conveyance books.
The trial court was of the opinion that the Supreme Court did not deal with the issue of “Recordation” in Lovell v. Fitzpatrick, supra, and was further of the opinion that Act 97 of 1890 required that the conveyance from the State to the Board of Levee Commissioners be actually inscribed in the conveyance books to be recorded and legally effective. In other words, the trial court felt that transcription in the conveyance book was a condition precedent to the passing of title from the State to the Board of Levee Commissioners. We disagree. We do not find anything in Act 97 of 1890 or in the cases interpreting the Act or similar acts to require that “recordation” pursuant to Act 97 of 1890 or similar acts required a different legal standard from that of ordinary conveyances.
The multitude of cases interpreting Act 97 of 1890 and the various other acts pertaining to other levee districts, were concerned with whether these particular legislative acts conveyed title to the levee district in praesenti or whether a usual formal act of conveyance subsequently recorded in the office of recorder was necessary to transfer title. In State v. Aucoin, supra, 20 So.2d at page 147, the Supreme Court stated:
“. . . It is well settled that the acts of the Legislature creating the several levee districts and transferring to the board of commissioners the lands belonging to the State within each district, such as Act 97 of 1890, creating the Atchafalaya Basin Levee District, were not transfers in praesenti, but were merely promises to transfer the lands to the boards of commissioners, respectively, as and when demanded. In fact it is declared in the statutes themselves — specifically in Section 11 of Act 97 of 1890 — that the title is not conveyed by the broad and general terms of the act, and will not pass from the State to the levee board, for any tract of land, until an instrument of conveyance is signed and issued by the State Auditor and the Register of State Land Office, describing and conveying the land for which the board of commissioners of the levee district or the president thereof shall demand an instrument of conveyance, — and until the instrument of conveyance is recorded in the office of the recorder in the parish in which the tract of land that is conveyed is situated."

“In the following cases it was decided, according to the provisions in the statutes creating the several levee districts throughout the State, that the title to the lands conveyed in the general terms of the statute would not pass to the board of commissioners of the levee district until an instrument of conveyance would be signed by the State Auditor and the Register of the State Land Office and be recorded in the conveyance records in the parish where the land described in the instrument is situated,-viz.: McDade v. Bossier Levee Board, 109 La. 625, 33 So. 628; Williams v. White Castle Lumber & Shingle Co., 114 La. 448, 38 S. 414; St. Paul v. Louisiana Cypress Lumber Co., 116 La. 585, 40 So. 906; State v. Cross Lake Shooting & Fishing Club, 123 La. 208, 48 So. 891; Hartigan v. Weaver, 126 La. 492, 52 So. 674; State ex rel. Atchafalaya Basin Levee Board v. Capdervielle, 142 La. 111, 76 So. 327; Atchafalaya Land Co. v. Grace. 143 La. 637. 79 So. 173: *193 State ex rel. Board of Com’rs of Caddo Levee District et al v. Grace, 145 La. 962, 83 So. 206; State v. Capdeville, 146 La. 94, 96, 83 So. 421, Atchafalaya Land Co. v. F.B. Williams Cypress Co., 146 La. 1047, 84 So. 351, decree affirmed 1922, 258 U.S. 190, 42 S.Ct. 284, 66 L.Ed. 559; Atchafalaya Land Co. v. Dibert, Stark & Brown Cypress Co., 157 La. 689, 102 So. 871; State, ex rel. Board of Com’rs of Tensas Basin Levee Dist. v. Grace, 161 La. 1039, 109 So. 830; Board of Com’rs of Tensas Basin Levee Dist v. Hardtner et al., 164 La. 632, 114 So. 494; Ballard Island Oil & Gas Co. v. Douglas, 172 La. 385, 134 So. 257; State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656; Standard Oil Co. of Louisiana v. Allison, 196 La. 838, 200 So. 273.”
An exhaustive examination of all of the above cases and other jurisprudence does not convince this court that stronger requirements are necessary “to record” under Act 97 of 1890 than for other conventional acts of conveyance of immovable property. No case has so held[9] and Lovell v. Fitzpatrick, supra, although without discussion, clearly assumes and holds that deposit with the recorder of the parish (even without the recorder’s endorsement) constitutes recordation pursuant to Act 97 of 1890 even though the instrument was not inscribed in the records until October 3, 1941, many years thereafter.
In fact, the tenor of these cases and the wording of the Act leads us to the inevitable conclusion that it was the intention of the legislature in enacting Act 97 of 1890 to require that the general laws pertaining to registry of conventional transfers of immovable property apply. In Williams v. White Castle Lumber & Shingle Co., 114 La. 448, 38 So. 414 (1905), the Supreme Court, at page 415, stated in reference to the requirements of Act 97 of 1890 as follows:
“It will be thus seen the intention of the act was and is that neither the title to, nor the possession of, the lands donated was actually to vest in the levee board until the state officials mentioned, to wit, the Auditor and Register of the Land Office, shall have acted in the way the statute directs, by making formal conveyance to the board, describing the lands; and only when this is done, and the act of conveyance duly inscribed in the conveyance records of the parish, was title and possession to the land so conveyed absolutely to vest in the board.”
“. .. The act under which alone the levee board could have acquired the land here in dispute provides for the registry of the title from the state to the board in the office of the parish recorder, and the general law upon the subject of registry applies to the conveyance of all lands that may be alienated by the board. .. ” (Emphasis by the Court)
Finally, the act of conveyance by the State Auditor to the Atchafalaya Basin Levee District dated September 28, 1899 recorded by the notation on the back “For recordation 4/21/03 C.A. Celestin”, although not inscribed in the indices and conveyance books until October 3, 1941 constituted a valid act of conveyance within Act 97 of 1890, constituted a valid transfer of the property from the State of Louisiana to the Atchafalaya Basin Levee District making said title and the title flowing therefrom superior to the attempted redemption by the Delerno heirs from the State of Louisiana by the deed dated December 4, 1940. Additionally, plaintiffs have failed to disprove by competent evidence that the deed was not in fact deposited in the Clerk of Court’s office prior to the attempted redemption relied on by the plaintiff. Thus, under Act 97 of 1890, title to the property was effectively transferred to the *194 Levee District and the subsequent attempted redemption relied on by the plaintiffs was invalid. The trial court clearly erred in holding to the contrary.
Having concluded that the evidence affirmatively establishes that Coastal’s lessor, L.L. & E., is the true owner of the property at issue in this litigation and that plaintiffs’ title thereto is invalid, it is unnecessary for us to consider the pleas of prescription or other questions of law involved.
For the above and foregoing reasons, the judgment of the trial court is reversed. All costs of this appeal to be paid by appellees.
REVERSED AND RENDERED.

. Plaintiffs claim ownership of the property in the following proportions: Joseph B. Delerno, Jr., 'A of 10/72; Darryl Frank Delerno, 'h of whr, *184 Helen Delerno Lee, "V72; Angelina Delerno Tho-masine, 20/72; Conchetta Delerno Dehart, 20/72; Lovelace Naquin, nhi\ Melba Walker Deler-no, */2 Of 10/72.

. Plaintiffs’ original petition made defendants Coastal States Gas Producing Company and Emerald Oil Company. Because of the filing of Chapter II Bankruptcy proceedings by Emerald Oil Company, a judgment granting a severance and separate trials was signed by the trial judge on June 13, 1980.

. The property is described in plaintiffs’ petition as:
A certain tract of land, situated in the Parish of Terrebonne, on the right descending bank of Bayou Little Caillou, about 20 miles below the Town of Houma, commencing at ten arpents from said bayou, measuring ten arpents Front, more or less, by a depth of survey, about thirty arpents; bounded above, nor or formerly, by Paul Forrest, Jr. and below by land formerly belonging to Joseph Watkins, now to the State of Louisiana or its assigns; said tract being that portion of Sections 22 and 23, T 19 S, R 18 #, commencing at ten arpents from Bayou Little Caillou, as above stated, with depth of survey of said section.

.The judgment of the trial court provided:
“IT IS ORDERED, ADJUDGED AND DECREED, that there is judgment herein in favor of the said plaintiffs, and against the defendant, Coastal States Gas Producing Company, adjudging the said Coastal States Gas Producing Company to be legally and justly indebted unto the following plaintiffs, each in the following amounts of principal and interest accrued through July 1, 1981, as stated hereafter on the line next to their names, to-wit:
Interest
Principal 7/1/81 Total
1. Joseph B. Delerno, Jr. $71,208.70 $32,711.04 $103,919.74
2. Darryl Frank Delerno $71,208.70 $32,711.04 3. Melba Walker Delerno $142,417.42 $65,422.07 $103,919.74 $207,839.49
4. Helen Delerno Lee $284,834.84 $130,844.13 $415,678.97
5. Angelina Delerno Thomasine $569,669.68 $261,688.26 $831,357.94
6. Conchetta Delerno Dehart $569,669.68 $261,688.26 $831,357.94
7. Lovelace Naquin $341,801.81 $157,012.95 $498,814.76
each together with legal interest per annum from July 1, 1981 until paid and for all costs.

.Act 97 of 1890 provides in pertinent part as follows:
"... After the expiration of said six months it shall be the duty of the Auditor and me Register of the State Land Office on behalf of and in the name of the State, to convey to the said Board of Levee Commissioners, by proper instruments of conveyance the lands hereby granted or intended to be granted and conveyed to said board, whenever from time to time said Auditor and said *185 Register of the State Land Office, or either of them, shall be requested to do so by said Board of Levee Commissioners, or by the president thereof, and thereafter said president of said board shall cause said conveyances to be properly recorded in the recorder’s office of the respective parishes wherein said lands are or may be located, and when said conveyances are so recorded the title to said land, with the possession thereof, shall from thenceforth vest absolutely in said Board of Levee Commissioners, its successors or grantees: ...”

. LSA-R.S. 47:2224 provides as follows:
“If the owner or any person interested personally or as heir, legatee, creditor or otherwise, in any lots or lands bid in for and adjudicated to the state, as long as the title thereto is in the state or in any of its political subdivisions, or if not heretofore contracted to be sold by such subdivisions, shall pay to the treasurer of the state, the taxes, interests and costs and five per centum (5%) penalty thereto, with interest at the rate of one per centum (1%) per month until redeemed, the Register of the State Land Office, upon production of the treasurer’s receipt, shall execute and deliver to such person a certificate of the same under the seal of his office, which, when duly recorded in the office of the recorder of mortgages of the parish wherein said property is situated together with the name of the person redeeming the same, shall be held and taken as evidence of the redemption of such land or lands; provided that in all cases where two or more lots or parcels of land, having been assessed as a whole without distinguishing the value of each lot or parcel separately, shall have been adjudicated to the state, the owner, or any person interested personally, or as heir legatee, creditor or otherwise, may redeem a lot or lots or parcels of such ground by paying to the treasurer the proportionate taxes due' thereon, with interest at the rate of one per centum (1%) per month until such redemption. In order to determine and ascertain the amount of taxes, interests, costs and penalties due on such lot or lots or parcels of land as are to be redeemed, the person desiring to redeem shall secure a certificate signed by the assessor and approved by the tax collector of the parish in which the property at issue is located, showing the proportion of taxes due on the lot or lots or parcels of land in question; and the treasurer is authorized to receive such proportion of taxes, interest, costs and penalties so established to be due, as aforesaid. The Register of the State Land Office, upon production of the treasurer’s receipt evidencing the payment of such proportion, shall forthwith execute and deliver to the person redeeming a certificate of redemption, which, when duly recorded in the conveyance office of the parish wherein the redeemed property is located, with the name of the person redeeming the same, shall be held and taken as evidence of the redemption of such lot or lots or parcels of land as is described in such certificate; the amount paid shall be entered upon the records of lands by the Register of the State Land Office, who shall also immediately notify the assessor of the parish wherein the' redeemed property is located, in writing, of the fact of such redemption; provided, however, that no such certificate of redemption shall be so issued to the person redeeming until and unless all state, parochial, district, and municipal taxes due on the property up to the date of redemption shall have first been paid; and provided further, that all certificates issued under the provisions of this section shall be in the name of the original owner, to ensure, however, to the benefit of any and all persons holding rights under such owner.
Upon the production of the receipt of the collector of state taxes for payment of the taxes for which the property was adjudicated to the state in default of a bidder, duly made and bearing date prior to the time of such adjudication, the Register of the State Land Office shall furnish the owner of such property a quitclaim of the title of the state, cancel the sale upon the records of his office, direct the recorder of mortgages to cancel the record of the act or deed of adjudication upon his records, and notify the auditor in writing, who shall charge the collector with the taxes thereon, with all costs and with twenty per centum (20%) damage, to be collected as any other money for which such collector may be in default.
All certificates of redemption issued in the name of the original owner to inure to the benefit of all persons holding rights under such owner to any lots or lands bid in for and adjudicated to the state and issued by the auditor or Register of the State Land Office twelve months or more after the day the act or tax deed to the state was filed for record in the conveyance office are valid and binding upon the state.
All certificates of redemption of lands issued by the Register of the State Land Office, the title of which lands, at the time the certificate issued, was in the name of the state or in that of any of its political subdivisions, which certificates of redemption are otherwise issued in compliance with the provisions of this section shall, if duly recorded in the office of the recorder of mortgages of the parish wherein said lands are situated, be *186 held and taken as evidence of the full and complete redemption of such lands, and as legal and valid.
In addition to the above methods of redemption, the tax debtor, heir, legatee, creditor or otherwise, may redeem any property which has been adjudicated to the state for nonpayment of taxes by paying to the Register of the State Land Office the actuál cash value of the property in lieu of all taxes, interest and penalties due thereon up to the year of redemption. The actual cash value will be determined by the assessor and president of the police jury or other governing body of the parish wherein the land sought to be redeemed is situated, subject to approval of the police jury or other governing body by appropriate resolution and the Louisiana Tax Commission.
The Register of the State Land Office shall issue a redemption certificate upon receipt of the amount determined to be the actual cash value of the property and shall withhold therefrom the cost of adjudication. The balance of the amount collected shall be paid by the Register of the State Land Office to the parish tax collector of the parish where the land is situated and he shall distribute same to the various taxing bodies in the proportion that the amount of taxes levied for the account of each of them for year such property was adjudicated bears to the total amount received by him.
No certificate of redemption shall be issued by the Register of the State Land Office under authority of this Section except upon proof of the interest of the person applying therefor, made to appear by due proof showing his interest in the redemption thereof as owner, heir, legatee, creditor or otherwise.”

. Lovell v. Fitzpatrick, 211 La. 262, 29 So.2d 843 (1947).

. LSA-C.C. arts. 2254, 2264, 2266 provide as follows:
Art. 2254. Effect of registry
“It shall be the duty of the recorder to indorse on the back of each act deposited with him the time it was received by him, and to record the same without delay in the order in which they were received; and such acts shall have effect against their persons only from the date of their being deposited in the office of the parish recorders.”
*191 Art. 2264. ■ Notarial acts concerning im-movables, effective date as against third persons
“No notarial act concerning immovable property shall have any effect against third persons, until the same shall have been deposited in the office of the parish recorder, or register of conveyances in the parish where such immovable property is situated.”
Art. 2266. Effectiveness of unrecorded acts affecting immovables; effect of subsequent recordation
“All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only effect third persons from the time of the recording.
The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer.” Cf. also LSA-R.S. 9:2721 which provides as follows:
“No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.”

. In McDade, et al v. Bossier Levee Board, 109 La. 625, 33 So. 628, (1902) on rehearing, the Supreme Court held that a grant to the Bossier Levee Board by Act 89 of 1892 was not a grant in praesenti and that the Board’s title and right of possession could only commence from the date a formal conveyance of the land to the Board from the date of April, 1901, the date there was a formal act of conveyance of the lands to the Board. In dictum, in referring to the time period prior to there being a formal act of conveyance, prior to April, 1901, the court stated: